# Ridgely *against* Dobson.

Although a member of an association, not served with process, cannot ordinarily be a witness to prove the liability of those who are served, and plead to issue, yet if such member was the agent of the association to make the contract, the plaintiff may examine him to prove the contract and his authority.

After the evidence is closed, and counsel have addressed the jury, and witnesses have been dismissed, it is too late for the defendant to add a plea requiring new evidence on the part of the plaintiff to repel it.

The members of an association are liable for goods furnished on the order of an agent of the association, if furnished with their concurrence or approbation.

If members of a literary association agree to subscribe a certain sum annually for books, to be paid to the treasurer, and books are ordered, a bookseller furnishing them cannot sue on such subscription.

In a suit against members of an association, in which one only is served with process, and proceeds to issue and trial, if his subscription to the articles of association be proved, it is not necessary for the plaintiff to prove the signatures of the rest.

In *assumpsit* against several, if some are served with process and appear and plead to issue, and some who are served make default, the plaintiff takes judgment by default against the latter; and under the 27th section of the Act of 1722, the jury which tries the issue against the former, may assess damages against all, and execution issues against all.

THIS was an action of *assumpsit,* brought by Judah Dobson, in the Common Pleas of *Bucks* county, to December term 1838, against Reynell Coates, Thomas Wood, G. W. Ridgely, M. O. Callaghan, Charles Roberts, J. M. Hibbs, James R. Scott, Rowland Stephenson, John Maulson, Robert Pitman, Alve E. Loring, Joseph F. Warner, C. H. Bessonett and Wilmot Martin, who survived Thomas G. Kennedy, formerly associated under the name of Bristol Lyceum, to recover the price of certain books alleged to have been sold and delivered to the Bristol Lyceum.   The sheriff made return to the writ, that he had " summoned G. W.

[Ridgely v. Dobson.]

Ridgely, James R. Scott, Joseph F. Warner and Thomas Wood, and *nihil* as to the rest of the defendants." The plaintiff filed a declaration against the defendants, who were summoned, and on the 24th day of June 1839, entered judgment against Scott, Warner and Wood, for default of appearance. G. W. Ridgely having appeared to the writ, pleaded *non assumpsit*, and payment with leave, &c., to which plea the plaintiff replied *non solvit* and issue, and on trial a verdict and judgment were rendered for the plaintiff. The facts of the case, and the points involved in it, are stated in the opinion of the court.

*Ross*, for the plaintiff in error.
*Dubois*, with whom was *Barclay*, for defendant in error.

The opinion of the Court was delivered by

HUSTON, J.—In this case it appeared that about 1832 several gentlemen proposed to establish a reading-room at Bristol. They drew up a plan of their intended association, to which they gave the name of their constitution. Its preamble states : " We, whose names are hereto subscribed, are convinced that great benefit would result to the inhabitants of the borough of Bristol and its vicinity, from the institution of a society for the cultivation of a literary taste, by placing the materials of knowledge more immediately within the reach of every resident." After some further very edifying sentences, it proceeds : " We therefore agree to associate ourselves for the purpose of mutual improvement, and the promotion of a desire of knowledge in our vicinity : for the furtherance of these objects we hereby bind ourselves to the observance of the following constitution and by-laws." This constitution and by-laws following this preamble was signed by fifteen persons, of whom G. W. Ridgely was one, and Reynell Coates another. The signature of G. W. Ridgely was proved.

The summons in this case was taken out against the whole of the subscribers, though served on but a part of them, of whom Mr. Ridgely was one. It was not served on Reynell Coates. The deposition of Reynell Coates was taken, and a cross-examination; and he being out of the state at the trial, it was offered in evidence together with the constitution and by-laws, which were proved by the deposition and annexed to it, so as in fact to form part of the evidence, as was also the book of minutes. The defendants objected to this deposition being read in evidence. No reasons for objecting to it appear in the bill of exceptions, but several were made here. The deposition proved that the witness was a member of the society, and secretary of the committee ; that the books and publications for the price of which this suit is brought, were ordered by the committee chosen by the society to designate and procure the proper books and publications ; that defendant was a member of the society and of the committee ; that the mem-

[Ridgely v. Dobson.]

bers chose a president, vice-president, secretary and treasurer; that the duty of these officers should be such as should be prescribed by by-laws. The by-laws, among other things, provided that the officers of the association shall be constituted a standing committee to represent the society in the interval of its meetings. The committee shall have power *to subscribe for any work*, to devise any plan for the furtherance of the designs of the institution, &c. That the annual subscription of the members should be $5, payable semi-annually, in advance.

The constitution and by-laws purported to be signed by the members, (15 in number,) among whom were defendant and Reynell Coates. The signature of defendant was proved also by another witness. The minutes showed that at a meeting of the committee, he had directed the books, for price of which suit was brought, as previously ordered by the committee: The American Quarterly; The N. American Review; The Museum of Foreign Literature and Science; The Edinburgh Review, American edition; The London Quarterly Review, American edition; The Library of Useful Knowledge; and his so doing was approved and adopted.

The minutes further show: " Resolved, That the standing committee proceed to establish a public library, and that they consider themselves resolved into a committee of the whole to procure such books as may be obtained for this purpose without encroaching on the present funds of the institution."

I do not know that I understand this last resolution. How books could be procured without funds is not to me very plain. Dr. Coates, in his deposition, states that at this time he was directed to order Silliman's Journal, and the Franklin Journal, and did order them, and that all were delivered and laid on the table of the association. The whole purchase amounted to $74. The subscription was $75, and if the last resolution was intended to prevent exceeding the funds subscribed, the publications ordered were within that sum.

On his cross-examination, Dr Coates said: "he considered himself bound in honour to make good any loss which might accrue to Mr Dobson, growing out of this transaction, after he, Mr Dobson, had taken all legal measures to recover from those under whose orders the deponent acted."

The objections to this testimony were, that a partner not sued cannot be a witness to prove that those who are sued ought to pay the claim sued for. If this is true in some cases, it don't apply here; for Dr Coates's testimony makes himself liable to contribution to the defendant against whom a recovery is had. The seller of goods is not generally a witness for himself, nor is the buyer a witness for himself. If an agent in the contract could not testify, a large proportion of the contracts of men could not be enforced. Hence a rule with few exceptions, if any, that an

[Ridgely v. Dobson.]

agent is a witness (I mean an agent by parol,) to prove his own authority, and to prove the contract; and the defendants in the present case cannot escape from the rule by appointing one of themselves agent, if that agent is willing to testify.

The evidence being closed on both sides, and after the defendant's counsel had addressed the jury for some time, he asked leave to add the plea " that the cause of action did not accrue within six years." The court refused to permit this, and this decision of the court is assigned for error. Our Act of 1806 says, a plaintiff shall not be nonsuited for any informality in a statement or declaration, or any informality in entering a plea; but plaintiff may amend his declaration or statement, and a defendant alter his plea or defence, on or before the trial of the cause. The construction of this Act has been very liberal. Any amendment not stating a different cause of action, but bringing the matter in more legal shape before a jury, has been allowed to a plaintiff; and any plea necessary to a defence has been permitted to a defendant, after the jury sworn; and even after the evidence has been closed, plaintiff has been allowed to amend informality in a declaration, or add one or more of the common counts in assumpsit to make his narr. conform to the case proved. But there must be a limit to every thing. A plaintiff may amend while the testimony is progressing, to get in evidence not admissible under the counts filed. So a defendant, to get in evidence not regular under his pleas. But after testimony is closed, and counsel have addressed the jury, and witnesses have been dismissed, I know of no case in which an alteration has been admitted which would require new witnesses, or the re-examination of witnesses. Here the plaintiff had proved his case, but not positively certain as to the time of the last promise. If defendant had, before or during the trial, pleaded alleging the limitation, the plaintiff might have examined his witnesses particularly as to this point, or called other witnesses. Now, I do not believe the Act contemplated opening the case to examination of witnesses at a period when they are usually gone home. Nor would it be consistent with the orderly proceedings of courts, or with justice to both parties, to return to the examination of witnesses after they had been dismissed, and the jury addressed by counsel. There was no error in this case on this point. By our settled practice, the lapse of six years from time of assumpsit does not avail a defendant unless he pleads it. If he does plead it, the plaintiff may show that it is within one of the cases excepted in the Act of Assembly, or may prove a new assumpsit within six years. In this case the plaintiff's proof was a deposition taken on cross-examination by defendant's counsel. The plaintiff nor the witness were aware of intention to use this plea. The witness spoke vaguely as to the time of last conversations with defendants. The plaintiff could possibly have produced

III. — 16

[Ridgely v. Dobson.]

other evidence on this point. Dr Coates, if apprised that it was material, could possibly have fixed dates more precisely.

If this application had been made early after the jury sworn, the plaintiff might have met it, or asked a continuance on account of surprise. After the testimony is closed, and witnesses dismissed, one counsel for plaintiff finished his address to jury and defendant's counsel about concluding, to admit a plea calling for evidence from plaintiff of which he had no notice, would be going further than the words or spirit of the Act would warrant. All laws and rules of court are intended to conduce to fair hearing and decision of causes. If this practice is followed, as asked by defendant, it would tend to confusion and irregularity in our courts, and might be used for something worse.

The President Judge told the jury that if they believed the defendant was one of those who ordered the books and one of the association, he was liable to pay for them; and then proceeded to answer certain points proposed:

1st. Defendants request the Judge to charge that this association did not constitute a partnership under the laws of the state. Answer: whether it was a partnership or not, in the mercantile sense of the word, is immaterial. We instruct you, that when men associate together, as in the present case, and purchase books, they are bound to pay for them—whether the object was literary, charitable, or profitable.

2d. If the jury believe the members of the association were to pay $5 annually or one-half in advance, then there was no liability on the part of the defendant. Answer: This may be true among themselves, but if they contract debts, no matter what their subscription was, they are liable to pay for them.

In 2 *Rawle* 263, it is decided that if joint-stock companies not incorporated contract debts, they are answerable to pay them. On this point the Court were unanimous; though a division on another ground. See 3 *Kent's Com.* 5. But this is not the only country in which men buy and endeavour to avoid payment. In 2 *Stark. N. P.* 416, a club of gentlemen associated and appointed one of themselves to purchase some plate for their club-room. The mechanic knowing the person who ordered the articles, charged them to him. It is a short case. Strickland, one of the members of the club, was sued, and sundry matters alleged in his defence. Abbot, C. J., left it to the jury to say, whether the articles were furnished with the previous concurrence or subsequent approbation of the defendant; for if that were the case, he and all who stood in the same situation were liable to pay for the goods. On another point, as the goods were charged to the agent, he left it to the jury, whether the plaintiff had trusted him, and must sue him, or might recover against the club, or rather its members. The court in bank affirmed this, and defendant had to

[Ridgely v. Dobson.]

pay. The last point don't occur here; the books were charged to the society or company.

If it had appeared that the constitution, by-laws, and subscription of the members, had been shown to the plaintiff, there would have been some colour for the second point; but only colour. The subscription was to be paid to the treasurer—not to Mr Dobson—and Mr Dobson could not have sued on that subscription.

The 3d point was not argued on as error. The court rightly said the subscription of the defendant was proved, and as he only was before the jury, it was not necessary to prove the signatures of the others.

4th. That taking judgment against several of the society who were served with the summons, by default, discharges the present defendant, who has pleaded to issue. The court answered, it was proper for plaintiff to take judgment against those who neglected to appear and plead, and this will not discharge the defendant from this action.

The counsel here did not object to the opinion on this last point. It was probably put to the judge on some indistinct recollection of the case in 13 *S. & R.* 289; but is essentially different from that case. Where two or more are sued, the plaintiff must have the case at issue as to all on taking judgment by default against those who do not plead: when the issue is tried as to the one who pleads, the verdict ascertains the amount due as well by those who plead as those who suffered judgment, and the execution issues against all. The 27th section of the Act of 1722, directs that on *interlocutory judgment the jury attending the same or next court,* may inquire of the damages and costs, which inquiry shall be made and evidence given in open court, &c. In the middle counties of this state, under the construction put on this Act, it has been the practice to proceed as in this case, for half a century, to my knowledge. I mean when judgment for want of a plea against one defendant, and plea and issue by others.

Judgment affirmed.