# Com. ex rel. Meconkey et al. *v.* Rogers.

[ JANUARY 17, 1848. ]

A judgment creditor who issues a *scire facias* to revive his judgment within five years, but after the real estate of the debtor was conveyed to another, and causes it to be served upon the judgment debtor and the purchaser as terre tenant, thereby continues the lien of his judgment, if he prosecute his writ of *scire facias* with due diligence.

But if the real estate of the debtor be sold by the sheriff before the judgment of revival be obtained, the land is discharged from the lien of the judgment, and the creditor cannot proceed to judgment of revival against the land so discharged from the lien, but must look to the proceeds of sale.

A judgment in favour of one firm against another firm where one of the partners is a member of both firms, may be sustained under the act of 14th April, 1838, and is a lien on the separate real estate of such partner; but his separate estate cannot be seized until the accounts are taken, and the equities settled between the parties.

A judgment against one partner, in a suit against two, without any service or return of *nihil habet*, &c., against the other, is erroneous; but a *bonâ fide* payment of such judgment by the sheriff, out of proceeds of land sold by him on which it was a lien, is a protection to the sheriff in an action brought against him by the judgment debtor or his subsequent judgment creditors, after a reversal of the judgment.

ERROR to the Common Pleas of Chester county.

The judgment of the court below was affirmed in this case, the supreme court being equally divided. The cause was ruled in the common pleas by Mr. Justice Bell, before his appointment to the supreme bench, and he did not therefore sit in the cause. The facts are fully stated in the opinion of the court below.

BELL, President.—The first question raised by the special verdict is, whether the defendant, as sheriff, properly paid out of the fund in his hands, proceeding from the sale of the real estate of George W. Pennock, the amount of the judgment recovered by William & Alexander Mode against

[Meconkey *v.* Rogers.]

Moses & Jesse Coates, and revived by *scire facias* and judgment therein, rendered on the 22d of April, 1837? Land bound by the lien of this judgment was, in 1839, conveyed by Jesse Coates, one of the defendants therein, and his wife, to George W. Pennock, who continued to be the owner thereof, until it was, with other lands, sold by the defendant as sheriff, on the 28th of October, 1842. Before the expiration of the lien, to wit, on the 18th day of April, 1842, an *alias scire facias* for its further revival was issued against Jesse Coates, and Pennock, as *terre tenant*, which was served on both of the defendants, on the 22d of the same month; and at May term following, a judgment for default of appearance was taken against Coates, but Pennock, the tenant, causing an appearance to be entered for him, no judgment was signed, as against him, nor were any further proceedings had, up to the time of the sale of the land bound. Under these circumstances, did this judgment continue to be a lien on the land sold, in the hands of the *terre tenant*, up to the time of sale? If this question is to be answered in the affirmative, it is conceded the payment made by the sheriff in satisfaction of the judgment was rightly made.

By the second section of the act of 4th April, 1798, no judgment is to continue a lien on the lands of the defendant for a longer period than five years, unless the plaintiff shall, within that term, sue out a writ of *scire facias* to revive the same.

By the third section of the same act, such writs of *scire facias* are to be served on the *terre tenant* of the real estate bound by the judgment, and it has been determined that where land, as here, has been aliened by the defendant in the judgment, within the period of five years, and no *scire facias* served on the *terre tenant*, or notice given him of such writ, within that period, the lien of the judgment is gone as against him, and the land in his hands; and this though the original defendant may have confessed a judgment of

revival within the statutory term, (*Clippinger* v. *Miller*, 1 P. R. 64; *Lusk* v. *Davidson*, 3 P. R. 229.) But, in the present case, the *terre tenant* was named in the writ of *scire facias*, and it was duly served on him. There can, therefore, be no complaint on the score of notice. But, notwithstanding this, it is said that, as against subsequent encumbrancers, in order to continue the lien of the judgment, the *scire facias* must be prosecuted to judgment, although the language of the act of 1798, taken literally, would seem to contemplate a revival, from the mere fact that the writ prescribed by it had been issued. On the authority of *Vitry* v. *Dauci*, 3 R. 9, this position may be conceded, with this qualification, however, that where a defendant or *terre tenant* appears, upon the return of the writ, the plaintiff will be entitled to a liberal share of indulgence as to time, within which to prosecute his suit to judgment. In such case, the lien of the original judgment will not be lost, except for laches and neglect of reasonable pursuit, and a failure to obtain a judgment in the *scire facias* before the expiration of the five years will not of itself defeat the lien. In the case decided, a period of seven years was permitted to elapse between the initiation of the process and its consummation, and this though the defendant did not appear. (See also *Cowden* v. *Brady*, 8 S. & R. 505.) This was justly held to be such negligence as postponed the party to subsequent mortgagees and judgment creditors. But no such neglect is observable here. The *scire facias* was returnable to May term, and the land bound sold in October, 1842. But one term elapsed in the interval, at which the plaintiff, using the utmost diligence, under the rules and practice of the court, could not have forced a trial. Add to this that pending the *scire facias*, the process of execution against Pennock must have been progressing; and indeed it seems that one portion of his property was sold as early as July.

Now if, as has been decided, under the circumstances

[ Meconkey *v.* Rogers. ]

which obtained, a liberal indulgence is to be extended to the judgment creditor in prosecuting his suit for a revival to judgment, it cannot, I think, be said, with any show of reason, that up to the time of the sale of the land, this indulgence was exceeded. But it is said, it was the duty of the creditor to pursue his suit to judgment, even after sale. But wherefore? The land was discharged by the judicial sale, and the creditor was bound to look to its proceeds as the fund from which he was to be paid. In the analogous case of a mechanic's lien, it was held, in *M'Laughlin* v. *Smith*, 2 Wh. 122, that the lien creditor, though bound to issue his *scire facias* within a given time, cannot proceed to judgment of revival after the lien has been discharged by a sale of the land, and that he is not bound to prosecute to a judgment, merely for costs. The same doctrine is asserted in *Com.* v. *Gleim*, 3 P. R. 417. In this there is reason as well as authority. Nor, as was argued for the plaintiff, was the sheriff bound to keep the funds in hand, until the *scire facias* was brought to judgment, in the absence of notice or intimation from any one—judgment debtor or subsequent lien creditor—that the judgment in favour of Mode was contested. Indeed, no one but the defendant would have been permitted to take defence, except on the ground of collusion and fraud in the concoction of the judgment, which is not suggested—and if *he* wished to resist the application of the proceeds of his land to its payment, he ought, in my opinion, to have given notice of a defence to the sheriff, and pleaded to issue. Under the facts and circumstances of the case, it was as much and more his duty to bring the case to issue by pleading to the *scire facias*, than it was the duty of the plaintiff to call upon him to do so. He did not do so, nor does he now suggest any defence or ground of resistance to the judgment, and it is going too far to call upon us to presume the existence of such a defence, upon the suggestion of other creditors, who recovered their respective judgments with an eye to and subordinate to this prior lien.

[ Meconkey *v.* Rogers. ]

Nor is there any thing in the idea thrown out on the argument, that the plaintiff, Mode, by signing a judgment by default against Coates, discharged Pennock's land of the lien, or in any way affected its liability. On the contrary, the constant and correct practice has been, where two or more are sued, and some appear, and others do not, to take judgment against those who fail to appear, and then rule the others to issue; or you may, after issue joined, sign an interlocutory judgment against those making default, and the verdict rendered on such issue, ascertains the amount due from all. *Marshal* v. *Gougler*, 10 S. & R. 164; *Nelson* v. *Lloyd*, 9 W. 22; *Ridgely* v. *Dobson*, 3 W. & S. 123.

I do not see, therefore, that the defendant violated any legal propriety in paying, as sheriff, out of the fund in his hands, the judgment in favour of Mr. Mode.

But another and more difficult question remains. Is the act of the sheriff, in applying a portion of the funds in his hands, arising from the sale of George W. Pennock's lands, in payment of the judgment recovered against him by the firm of Swayne & Pennock, to be justified in this suit?

The judgment rendered by this court, upon the verdict of a jury, in *Swayne & Pennock* v. *Pennock*, was reversed by the supreme court, more than a year after its rendition, upon a point not made, nor in any way brought to the notice of the court below. Of the defect in the record, upon which the judgment of reversal proceeded, as a legal objection to the validity of the judgment, every one interested in the estate bound by it, appears to have been profoundly ignorant, each and all regarding it as a good judgment and effective lien, at least up to April, 1843, when the writ of error was sued out. Long before this, to wit, in November, 1842, the defendant, as sheriff, had paid out the funds in his hands to the several lien creditors of George W. Pennock, and, among the rest, in satisfaction of the judgment now in question. Then, and after the sheriff had parted with the whole amount of the fund, came the reversal.

[Meconkey *v.* Rogers.]

But if the judgment was a lien on the land of the defendant in it, at the time of the sale of that land by the sheriff, he was right in paying it out of the proceeds at any time before reversal, and the subsequent reversal gives no title to the defendant, or any one else, to call on the sheriff to repay, out of his own pocket, the amount disbursed by him, on the faith of a recorded judgment of the court of which he was the officer; especially in the absence of any notice that its validity was questioned, or of an intention to sue out a writ of error. Notwithstanding the strong language used, in reference to this judgment, by Mr. Justice Huston, when delivering the opinion of the court, in *Pennock v. Swayne*, 6 W. & S. 241, it must be held to have been merely irregular and voidable, and not void; but good and binding, as the judgment of a court of competent jurisdiction, until reversed. *Lewis* v. *Smith*, 2 S. & R. 142, 156; *Martin* v. *Rex*, 6 S. & R. 296. In such case I take the rule to be undoubted, except under extraordinary circumstances:—the only remedy for the plaintiff in error is by award of restitution against the plaintiff in the execution, if he have received the money; and even this is in the discretion of the court, and will not be accorded where equity and good conscience forbid it. Treatise on Sheriff Law, 46 Law Lib. 207–8, 255, 301; 2 Salk. 587; 2 Tidd's Pr. 933–4–5–6; 2 Saund. 101; 2 Bac. Abr. by Bouv. 389, tit. Error, 3; *Fitzalden* v. *Lee*, 2 D. 205, S. C., 1 Y. 207; *Baker* v. *Smith*, 4 Y. 185; *Cassell* v. *Cooke*, 8 S. & R. 296; *Kirk* v. *Eaton*, 10 S. & R. 103; *Willard* v. *Norris*, 2 R. 63; *Smith* v. *Sharp*, 5 W. 292–3. And why should it be otherwise? A judgment of a court of competent jurisdiction cannot be treated as a nullity, except perhaps for fraud and collusion in the procurement of it, and to secure a fictitious debt. Every judgment standing upon the records of a court of record, is to be treated as a subsisting one, however irregular upon its face. *Hays* v. *Shannon*, 5 W. 548; *Hazelett* v. *Ford*, 10 W. 103; 3 S. & R. 141.

[ Meconkey *v.* Rogers. ]

If so, the sheriff is bound to pay it, and may be subjected to a suit, if he do not. It is true, he may pay the money into court, but this is seldom done, and never, in this district, unless notice be given of conflicting claims, or that the judgment creditor's right to receive, is to be in some way contested. *Meason's Estate,* 4 W. 345; *Leeds* v. *Bender,* 6 W. & S. 315. Nay, the pendency of a writ of error will not, I conceive, bar the creditor of his right to receive the amount of his judgment; unless under peculiar circumstances, *Graham's Appeal,* 4 W. 43; such, perhaps, as the insolvency of the creditor; and this exception would proceed upon the non-liability of the sheriff in case of reversal. But were it otherwise, I take it to be settled, that strangers to the judgment, as subsequent encumbrancers, cannot take advantage of such reversal by calling on the sheriff, in a collateral action, to make good the sum paid in discharge of the reversed judgment. These can only impeach the judgment collaterally for fraud and collusion in its concoction to secure the payment of a fictitious debt, which might otherwise sweep away their means of payment. *Hays* v. *Shannon; Hazelett* v. *Ford,* supra; *Haver's Appeal,* 5 W. & S. 473, overruling *Ulrich* v. *Voneida,* 1 P. R. 250; *Stewart* v. *Stocker,* 13 S. & R. 204. Such creditors would not, I think, be for a moment listened to, should they demand restitution to be awarded against a sheriff, or even against the plaintiff in the execution, founded on a judgment reversed for irregularity.

There is, therefore, nothing springing from the mere fact of the reversal of the judgment recovered in *Swayne et al.* v. *Pennock,* which can give the plaintiff a title to recover any thing in this action.

This brings us, unembarrassed by these considerations, to the main question:—Was this judgment, before its reversal, a lien on the private and particular estate of George W. Pennock ?

Notwithstanding the suit brought by Swayne and Pen-

nock proceeded against George W. Pennock alone, his co-partner not being summoned, yet the judgment rendered must be taken as against the partnership of which George and Joel were the members, under which the partnership estate and effects, if any, might have been levied and sold. The fact that Joel was not summoned, did not make it less an action against the firm, and for a firm debt, than if both partners had been parties to the record. *Taylor* v. *Henderson*, 17 S. & R. 455. The judgment recovered is, then, in favour of one firm against another firm, one of the members of both being a plaintiff and also a defendant. This brings the case within the decision in *Tassey* v. *Church*, 6 W. & S. 465, which ascribes to such a judgment an anomalous character, distinguishing it in its legal attributes and effects, at least for some purposes, from the ordinary judgment at law, in actions *ex contractu*. If, looking to that decision and giving it a candid construction, I was forced to the conclusion that it determines, a judgment recovered in an action given by the first section of the act of 14th April, 1838, is not, for any purpose, a lien upon the separate real estate of the defendants, partners, but must be viewed simply as a means of reaching the partnership effects, and nothing beyond, I should feel constrained to say the plaintiffs are entitled to recover in this action; however hardly such a recovery might operate against the defendant under all the circumstances that have place here. In such event, there would, in my apprehension, be found in the case, no equitable estoppel, springing from the silent acquiescence of the creditors in the distribution of the moneys, or from want of notice that the right of the creditor firm to receive any part of the proceeds of sale would be contested, sufficient to protect the sheriff. Silence will not estop unless it be fraudulent, and it is never so where it results from ignorance, or the fact is equally within the knowledge of both parties. *Alexander* v. *Kerr*, 2 R. 89; *Robinson* v. *Justice*, 2 P. R. 19; *Smith* v. *Black*, 9 S. & R. 146.

2 E

Nor, am I inclined to think, would he find any defence in the fact that the judgment was docketed against George W. Pennock alone, and the certificate of the prothonotary delivered to the sheriff, indicated it as a several judgment, for, to say nothing of actual notice at the time of the service of the summons, it is the duty of the sheriff, who undertakes to distribute the fund raised by him on execution, to look to the whole record of the several judgments. If he had done so in this instance, he would have learned the original form of the action. So, too, in the contingency I have supposed, I should strongly doubt whether there was any such ratification of the acts of the sheriff, in the acceptance of costs by the subsequent judgment creditors, as would bind them; or any thing amounting to a positive agreement that the amount in the sheriff's hands should be distributed in a particular way, including the payment of the *Swayne* v. *Pennock* judgment, as was the case in *Latimer's Estate*, 2 Ash. 524; *Pennepacker's Estate*, C. P. of C. C., Dec. 1841, and *Aycinena* v. *Perries*, 6 W. & S. 251. But let it be conceded or shown that the judgment recovered by Swayne & Pennock was a lien on the land of George W. Pennock, for any purpose, and the whole case assumes a different aspect.

Whether it was so or not, prior to its reversal, is, notwithstanding *Tassey* v. *Church*, I think, an open question. It is certain, the reasoning of the very learned judge, who delivered the opinion of the court in that case, unless very narrowly scanned in every part, would apparently lead to the conclusion that such a judgment was without the quality of lien upon the private estate of the individual partners; for if there can be no levy by execution, it would seem an almost necessary corollary, there can be no lien. But since the argument of the case at bar, I have been favoured with a pamphlet, printed and published under the sanction of Judge Grier, who decided the case below, containing a full report of *Tassey* v. *Church*, including the

[Meconkey v. Rogers.]

opinion of the judge, as well as the opinion of Gibson, C. J., as originally delivered. On consulting this, it will be found that Judge Grier, whose decision, and the reasoning upon which it is based, was before, and affirmed by the supreme court, although he determined that the creditor firm could not then levy on the private estate of one of the debtor firm, expressly reserved the question whether the court would not order the judgment to remain as a security for such sum as Church might thereafter recover against Tassey, in an action of account render, or by bill in chancery. But what is, perhaps, more to the purpose, in the opinion of the supreme court as originally delivered by Gibson, C. J., the concluding sentence, as we now have it in our reports, is omitted. That opinion at first ended thus: " We are of opinion, therefore, that the levy was properly set aside; and that Tassey's separate property cannot be touched by execution."—But, afterwards, as it would appear upon reflection, the sentence was added to, and it now reads, " Tassey's separate property cannot be seized till the accounts are taken and the equities settled between the defendants." This superadded clause controls the generality of the previous reasoning, and shows, I think, that the judgment may be considered as possessing a power beyond the mere settlement of the general question of indebtedness between firm and firm, and its supposed capacity to subject only the joint effects to seizure. If the separate property of a defendant partner cannot be seized till the accounts are settled between him and his partner plaintiff, it follows that, if upon such settlement, the former be found indebted to the latter, his separate estate may be seized for, at least, the amount so found due, and if this estate be in realty, why may it not be taken in execution by virtue of the judgment? In a case like the present, there is no incongruity or impropriety, legal or equitable, in holding the judgment to be a lien, standing as security for what shall be eventually found due, looking to the equities of all

[ Meconkey *v.* Rogers. ]

the parties. On the contrary, so to hold is in accordance with the general law which makes recorded judgments liens upon every interest which a defendant has in land, amounting to an estate. Upon this point, the provision of our act of 1836, (copied, in this particular, from the old act of 1810) that every award entered by the prothonotary shall have the effect of a judgment from the time of the entry thereof, and shall be a lien on his (the defendant's) real estate, until reversed upon appeal, or otherwise satisfied according to law, is peculiarly applicable. No mischief can result from giving full effect to this provision in cases like this. The defendant whose estate is bound, cannot complain, for he may either bring his action of account render, or, under the equitable powers now vested in our courts, proceed in equity, and if he be really not indebted, soon free himself of the encumbrance. In the mean while, the court in which the judgment is, having full power over their own process, upon proper application, will see that it is not used for the purposes of injustice. This was the course pursued in *Tassey* v. *Church*, and the decision amounts to nothing more than that, upon a proper representation, the court will restrain the plaintiffs from having execution of their judgment against one of the debtor firm until it be ascertained they are equitably entitled to it.

On the other hand, to hold that the judgment was null as a lien against the separate estate of the defendants, or either of them, would, as it seems to me, frequently do injustice to the plaintiff partners, by depriving them of a security which the law, ordinarily, offers to the diligent creditor.

If we are right in the opinion that the judgment recovered by Swayne and Pennock, was a lien on the lands of George W. Pennock, at the time of the sheriff's sale, it seems to me the law casts upon him and those who claim to stand in his shoes, a duty in respect to it. *Primâ facie*, and in the absence of notice of facts not appearing on the record,

[Meconkey v. Rogers.]

the avails of the sale were applicable to its discharge, in its order. If the money had been paid into court, that tribunal, having all the parties before them, and hearing no objection or suggestion of difficulty, from any one, might rightly have directed the amount of this judgment to be paid to the plaintiffs. Under such circumstances, I take it, the silence of the defendant and all others interested, might and would have been accepted as a confession that this amount was justly due to the plaintiff firm, from the owner of the land sold. The course pursued in *Tassey* v. *Church* shows this. There, after the district court, on its equity side, had entertained Tassey's bill, praying an account, the plaintiff issued an execution on the law side of the court, but this execution was not interfered with until Tassey came in and filed a suggestion that Church, one of the plaintiffs, was the same Church named defendant. Whereupon, on motion, the court set the execution aside, for the reason they had before given, that, until a settlement of the accounts, there could be no recourse to the separate property of the partner. In the absence of any intimation or motion upon the part of the defendant or his creditors, it would be no part of the duty of the court to order the parties to bring an action of account render, to direct them to go into chancery, or to award an issue to try the state of the accounts between them.

On the whole case, as presented by the special verdict, I am of the opinion the plaintiffs are not entitled to recover, and therefore direct judgment to be entered for the defendant.

*Lewis* and *Meredith*, for the plaintiff in error.
*Pennepacker* and *T. Sergeant*, for defendant in error.

Per Curiam.—Judgment affirmed.