SHEEHY, Respondent, vs. BLAKE and others, Appellants.

*September 24 — October 9, 1888.*

*Unincorporated religious societies: Personal liability of members: Agency: Partnership.*

A complaint alleging that the defendants, as members of a voluntary unincorporated religious society, through their trustees and priest who governed the members in secular affairs and had power to incur debts for the association which became the joint and several indebtedness of its members, stated an account with the plaintiff's assignor and agreed to pay him the balance found to be due him for his salary as priest and for money advanced for building the church and paying old debts, does not seek to hold the defendants as a partnership, but states a valid cause of action against them individually upon an indebtedness incurred by them through their authorized agents.

APPEAL from the Circuit Court for *Fond du Lac* County. The case is stated in the opinion.

For the appellants there was a brief by *Gerpheide & McKenna* and *Kelly & Martin*, and oral argument by *Maurice McKenna*.

For the respondent there was a brief by *J. H. McCrory* and *Shepard & Shepard*, and oral argument by *C. E. Shepard*. They cited *Thompson v. Garrison*, 22 Kan. 765; *Ray v. Powers*, 134 Mass. 22; *Robinson v. Robinson*, 10 Me. 240; *Dow v. Moore*, 47 N. H. 419; *Cockerell v. Aucompte*, 2 C. B. (N. S.), 440; *Hall v. Thayer*, 12 Met. 130; *Tyrrell v. Washburn*, 6 Allen, 466.

COLE, C. J. This action is brought against a large number of persons forming a voluntary unincorporated congregation of the Roman Catholic Church to recover a debt due from them as such congregation. The defendants demurred to the complaint on several grounds. The court below, on motion, struck out the demurrer for frivolousness, giving

leave to answer over. The defendants have appealed from this order, and under our practice we shall consider the demurrer on the merits. But one ground is relied on here, viz., that the complaint does not state facts sufficient to constitute a cause of action. The counsel for the appellants insists that the complaint proceeds on the theory that the religious organization to which the defendants are alleged to belong constitutes a partnership, and that the personal responsibility of the defendants is sought to be maintained on the relation or liability of partners. The counsel for the respondent, however, repudiates the idea or intimation that the action goes upon any such theory. He says he does not seek to hold the defendants as partners, but upon the ground that they were and are members of a voluntary unincorporated religious association, who jointly and severally acted by or through their agents or trustees, having the power to bind all the members personally by their acts. He insists that it is a matter of common knowledge that associations are formed in this country for various purposes, which are not pure partnerships because trade or business is not their object nor pecuniary gain their end and aim; yet that these associations contract debts and incur liabilities which bind all the members jointly and severally. It becomes, therefore, necessary to refer to the allegations of the complaint, to determine whether upon the facts set forth the defendants became liable for the debt upon which the action is brought. The complaint is long, and it must suffice to give the material facts as they are fairly summarized on the brief of respondent's counsel.

It appears from the complaint that the defendants were in 1883, and now are, members of a voluntary unincorporated religious association of the Roman Catholic Church; that they had a priest as their religious head, and trustees who, with the priest, governed the members in secular affairs, and who had power to incur debts for the association

which became the joint and several indebtedness of its members; that the expenses and the debts incurred by the trustees were met by contributions and dues on the members, and all such affairs were conducted with the knowledge, approval, and subsequent ratification of the defendants, being members of the association; that the Rev. James Colton was for many years prior to 1883 the parish priest of the congregation, and became its creditor for cash advanced to aid in building its church edifice and paying off old debts, and for his own salary, part of which debts were paid; that on March 10, 1883, the said Rev. James Colton, having ceased to be the parish priest, stated an account with the defendants, as such association, acting by their parish priest and others thereto duly authorized by its members and trustees as its agents, and a balance of $3,220.20 was struck and agreed on as the sum due to him from the defendants jointly and severally; " that in consideration of said indebtedness and account stated, it was then specially in writing agreed by said association and by the defendants as and composing said association, jointly and severally acting by their said trustees and agents, to pay the said Rev. James Colton, on demand, as a final and complete settlement, all of their indebtedness to him, with interest on said sum at six per cent. until the indebtedness was paid." Further, that this indebtedness and contract were assigned to the plaintiff at the time named, and that a certain sum remains unpaid.

So it will be seen from these averments that it is not sought to hold the defendants liable on the ground that they were members of an association which constituted a partnership in a legal sense, but upon the ground that they had incurred personal liability, acting by agents who were duly authorized to bind the members by their acts in making the settlement and stating the account between the association and their former parish priest, Rev. James Colton.

Upon the facts stated, the trustees, with the priest, had full power to incur debts for the association which became the joint and several indebtedness of its members. The debt in question was for cash advanced to build a church edifice, a place for religious worship and services, and to discharge just debts,— objects clearly within the scope of the association. The members had the right indubitably to contract a valid debt for erecting a church building, for the salary of their priest, and to pay their indebtedness, and they could bind themselves personally for such a liability. It is alleged that they did bind themselves by agents duly authorized to settle and pay their indebtedness to the Rev. James Colton and to state an account with him, and in writing agreed as members of such association to jointly and severally pay the amount found due, with interest.

What legal objection can there be to holding the defendants upon such facts liable for a debt which they had thus contracted, assented to, and agreed to pay? They certainly had the right to bind themselves by their agents in such a contract, whether there were many or few of them. The case would seem to involve the ordinary principles of agency. The trustees and parish priest, in incurring the alleged indebtedness, acted merely as the agents of the association and its members, with power to bind them jointly and severally by their acts. Under such circumstances it is no hardship to hold them liable personally for the debt. This responsibility does not rest upon the mere fact that they are or were members of the association when the debt was incurred, but upon the ground that they approved of or participated in contracting it, and subsequently assumed and agreed to pay it through their authorized agents.

In the case of *Ash v. Guie*, 97 Pa. St. 493, which appellants' counsel cites, the principle is recognized that the members of the committee, or those members of a lodge who

participated in the erection of a building for the lodge by voting for or advising it, and those members who in any way assented to the undertaking or subsequently ratified it, were liable.   This was an action against the members of a lodge — being unincorporated — for a debt incurred in purchasing a building lot and for erecting a building thereon. The court, among other things, say: "The proof fails to show that the officers or a committee or any number of the members had a right to contract debts for the building of a temple which would be valid against every member from the mere fact that he was a member of the lodge.   But those who engaged in the enterprise are liable for the debts they contracted, and all are included in such liability who assented to the undertaking or subsequently ratified it. Those who participated in the erection of the building by voting for and advising it are bound the same as the committee who had it in charge."   Page 500.   See, also, *Park v. Spaulding*, 10 Hun, 128; *Ridgely v. Dobson*, 3 Watts & S. 118; *Delauney v. Strickland*, 2 Starkie, 416.   This latter case was where a club of gentlemen associated and appointed one of themselves to purchase some plate for their club-room.   The merchant, knowing the person who ordered the articles, charged them to him.   Strickland, one of the members of the club, was sued, and sundry matters alleged in his defense.   ABBOTT, C. J., "left it to the jury to say whether the articles were furnished with the previous concurrence or subsequent approbation of the defendant; for if that were the case, he and all who stood in the same situation were liable to pay for the goods.   On another point, as the goods were charged to the agent, he left it to the jury whether the plaintiff had trusted him and must sue him, or might recover against the club, or rather its members.   The court in bank affirmed this, and defendant had to pay."   See, also, *Cockerell v. Aucompte*, 40 Eng. L. & Eq. 279; *Volger v. Ray*, 131 Mass. 439.

The appellants' counsel suggests that it would be hard and unjust to hold every person who was a member of the association on the 10th day of March, 1883, or who had since become a member, liable for this indebtedness, contracted without the consent, privity, or ratification on the part of the person sought thus to be held bound. But it is manifest that such a case is not before us on the facts set forth in the complaint. Here it is sought to hold the defendants on the ground that they authorized their agents to incur the liability. This rests their responsibility upon a clear, well-settled principle of law.

The same counsel requested this court, if it affirmed the order, to give the defendants leave to answer. That is plainly a matter for the circuit court, which will doubtless grant such leave on application therefor. Surely the defendants ought to have an opportunity to answer and defend the case on the merits, and we must presume the court below will give them that right. But the order is affirmed for the reasons stated, and the cause remanded for further proceedings according to law.

*By the Court.*— Ordered accordingly.