SHEEHY, Respondent, vs. BLAKE and others, Appellants.

*September 5 — September 23, 1890.*

*(1) Pleading: Admission in answer. (2) Unincorporated religious society: Individual liability of members: Agency: Ratification.*

1. A complaint alleged "that on March 10, 1883, and for many years theretofore, the defendants were, and they still are, a voluntary, unincorporated association of persons" known as the society of St. Patrick's church. The answer was that said defendants "admit that previous to the year 1883 they were members of and met at a certain church . . . known as 'St. Patrick's Church.'" *Held*, that this was an admission of the defendant's membership at and previous to the year 1883.

2. The evidence in this case — tending to show, among other things, that the financial and secular affairs of an unincorporated religious society were managed by trustees and a secretary and treasurer elected from time to time by the congregation, together with the officiating priest; that moneys were advanced for the society from time to time by the priest, C., for the erection of a church building, and that he allowed much of his salary to remain in arrears; that the secretary kept regular books showing the accounts between the society and said priest, and from time to time these were balanced and the amount of the indebtedness to the priest publicly stated to the congregation assembled in the church; that finally, after said C. had been succeeded by another priest, a final settlement of said accounts was made by a member of the society as attorney for C., and by a committee consisting of a former secretary of the society, an attorney at law and trustee thereof, and the successor of C. in the priesthood, representing the society; and that the amount of the indebtedness to C. was then determined and the terms of payment fixed — is *held* to sustain findings by the jury that said committee was authorized by the members of the society to make such settlement, and that it was ratified and approved by them. Such members are therefore individually liable to pay the indebtedness thus found due to C.

APPEAL from the Circuit Court for *Fond du Lac* County.

Action to recover a debt alleged to be due from the defendants, as members of an unincorporated church or congregation, upon an account stated between them and Rev.

James Colton, the plaintiff's assignor, on March 10, 1883. On a former appeal (72 Wis. 411) an order striking out a demurrer to the complaint was affirmed.

The answer denies that certain of the defendants were members of the congregation or church on March 10, 1883, or at any time previous thereto, and admits that the other defendants were members previous to the year 1883. It also denies that an account was stated, as alleged in the complaint, between Rev. James Colton and the members of the church, or any one authorized to act for them; and denies that on March 10, 1883, or for more than one year prior thereto, or at any time subsequent thereto, the defendants or either of them were indebted, jointly or severally, to the Rev. James Colton in any sum whatever. Other matters of defense contained in the answer need not be here stated.

The facts appearing from the evidence are stated in the opinion. At the close of the testimony a nonsuit was granted as to those defendants whose membership in the church was denied in the answer.

The jury, by a special verdict, found, among other things, (1) that the Rev. J. J. Keenan, A. A. Kelly, and Felix Rogers were authorized by the defendants, as members of St. Patrick's congregation, to state an account and settle their indebtedness with the Rev. James Colton, and that for and in behalf of the defendants they made the contract dated March 10, 1883; and (2) that the defendants, after having knowledge that such contract was made, ratified and approved the same. From the judgment entered upon the special verdict in favor of the plaintiff, the defendants appealed.

For the appellants there were briefs by *Gerpheide & McKenna* and *Kelly & Martin*, attorneys, and *Pinney & Sanborn*, of counsel, and oral argument by *Morris McKenna* and *S. U. Pinney*.

For the respondent there were briefs by *J. H. McCrory* and *Shepard & Shepard*, attorneys, and *Edward W. Frost*, of counsel, and oral argument by *C. E. Shepard* and *J. H. McCrory*.

ORTON, J. The testimony tends to show the following facts: About the year 1860, the society or association of the St. Patrick's Church of Fond du Lac, composed of the congregation of said church, was formed without any incorporation, as is customary with that church. Its financial and secular affairs were managed by a board of trustees elected from time to time by the congregation, together with the officiating priest, and the secretary and treasurer also so elected from time to time. In about the year 1863, the Rev. James Colton became the priest of said church, and so remained until his health failed in 1881, when the present priest of said church, the Rev. J. J. Keenan, was appointed to take his place. When the Rev. Mr. Colton took charge of said congregation he found it without any good place of worship, and very poor, and badly in debt, and during the next few years he assisted it in building a large brick church, and advanced for them, from time to time, large sums of money, and allowed much of his salary to remain in arrears. Regular books of the congregation were opened and kept by the secretary of the society, showing all these transactions, and the accounts between the society and said Colton from that year until March 10, 1883, and all the payments thereon. From time to time said books were balanced and the exact amount of the indebtedness of the society to said Rev. Mr. Colton clearly shown. At each time of said rests or settlements, the state of said accounts was publicly stated or published and made known to the congregation assembled in said church, composed of all the then members thereof. It appears that the said Rev. Mr. Colton loaned the society the sum of $2,000 to

aid them in building said new church, in 1865 or 1866, and this loan was placed upon the books as the "Hamilton" indebtedness, to conceal the name of said Rev. Mr. Colton, for some reason of his own. This, together with his back salary and sums of money otherwise advanced by him, remained on interest, by the understanding of the congregation. These balances so found and published and on the books, or some of them, are as follows: The said Hamilton debt of $2,000, and other indebtedness of the society to Rev. Mr. Colton of $1,366.02, in 1870. In 1871, the other indebtedness was $1,080.31. In 1875, it was $1,177.02. In 1876, $715.61. In 1877, the Hamilton debt, with accrued interest, was $2,291.67, and the other indebtedness, $906.67. In 1878, the Hamilton debt and interest were $2,156.66, and the other indebtedness, $865.89. In 1880, the other indebtedness was $1,286.64. And finally, March 1, 1881, deducting all payments, the total amount of the indebtedness of the society to said Rev. Mr. Colton was stated and published at $3,220.24. The interest is added to the debt, and all the payments are duly credited on the books. The last statements since 1881 appear upon new books, with the Rev. J. J. Keenan as pastor and treasurer. These statements, since 1871, are signed by the secretary and treasurer as correct. Then on March 10, 1883, a final settlement of these accounts was made by Mr. Duffy, a member of the congregation, as attorney of the Rev. Mr. Colton, by a Mr. Gough, who had been secretary of the society from 1863 to 1870, and A. A. Kelly, an attorney at law and one of the trustees of the society, acting for the congregation, and by the officiating priest, the Rev. J. J. Keenan. On an account stated, the congregation was found to be indebted to the Rev. Mr. Colton in the sum and balance of $3,220.20, and the terms of payment fixed. Since then there has been paid on said indebtedness so found the sum of $450. On April 19, 1884, the said Rev. Mr. Colton, being on his death-

bed, assigned his said account and settlement to his sister, the plaintiff in this action, and soon after died.

The complaint charges individual members of said society with this indebtedness shown upon the books, and so balanced from time to time, and determined and fixed by said settlement, alleging that they were members of said society during such time, and assented to and authorized said indebtedness, and became individually liable for the same. The learned circuit court construed the answer as having admitted the membership of the defendants, except certain ones named therein; but this construction of the answer is contested by the learned counsel of the appellants. We are unable to put any other construction upon some specific admissions of the answer than an admission of their membership. The complaint alleges "that on March 10, 1883, and for many years theretofore, the defendants were, and they still are, a voluntary unincorporated association of persons," etc. The answer is "that said defendants (excepting certain ones named) admit that previous to the year 1883, they were members of and met at a certain church in the city of Fond du Lac, known as 'St. Patrick's Church,' and at said church conducted religious and devotional exercises according to the rites and doctrines of said church, and that the membership of said church was constantly changing by the admission of new members and by the death and removal of others." The answer then puts in issue the account and settlement, and denies their having empowered any one to make such settlement, and their assent to such indebtedness. The above admission is as broad as language could make it. For this reason no evidence was adduced by the plaintiff to prove that the defendants named were members of said society at and previous to the year 1883. We think that the learned circuit court was clearly correct in its construction of the answer as an admission of the defendants' membership. The persons so

excepted in the answer were omitted in the verdict and judgment.

The only important question on the merits of this case is whether these defendants, as members of the congregation, ever became bound as individuals to pay this indebtedness by their assent to or ratification of it, or by their authorizing others to make such final statement. There is really no question of law reserved which affects the merits and justice of the plaintiff's claim. The decision of this court in the case when it was here on demurrer to the complaint (72 Wis. 411), is a final adjudication of the liability of the defendants on the facts stated in the complaint, and comes very near, if not quite, an adjudication of their liability on the facts proved on the trial. In the opinion of the chief justice, " the trustees with the priest had full power to incur debts for the association, which became the joint and several indebtedness of its members. . . . The trustees and parish priest, in incurring the alleged indebtedness, acted merely as the agents of the association and its members, with power to bind them jointly and severally by their acts. . . . They approved of or participated in contracting it, and subsequently assumed and agreed to pay it through their authorized agents." The authority of the trustees and the priest is the same according to the facts proved as in the complaint,— to contract debts for the association, and to settle the same. Cases are cited in the opinion, in which is held that the authority of agents of unincorporated associations was established on less evidence.

In most cases it would be extremely difficult to charge liability on the individual members of such an association by proof of any personal participation in incurring the indebtedness; and, from necessity, their liability has to be inferred from the manner in which such business was done and their relation to those who acted directly in incurring it. The members of such an association cannot personally

attend to the building of churches, the payment of the minister's salary, the making of contracts, or to the financial affairs generally of the association. If their manner of doing their business was to appoint trustees and employ a priest to attend to such matters, and to have a secretary to keep their books of account, and to appoint committees or certain persons to settle and adjust doubtful or contested claims, it seems plain that they ought to be bound by their action as their agents. It is doubtful if there is any case in the books where there is so much evidence of the assent to or ratification of a claim against the association, or the authority conferred on agents by the members of the association, as in this case. The evidence is overwhelming that the defendants, as members of this association, have for many years known all about this indebtedness to Rev. Mr. Colton, and the exact balance of it from time to time through a series of many years, and tacitly assented to it and ratified it, and knew about the final settlement of it and approved it. They must have known all the time what their trustees and other agents did in incurring it, and how it was incurred and for what purpose, and their final settlement of it. If it had been a single and unrepeated transaction it would require more evidence of their assent or of the authority given to agents. From 1863 down to 1881 many rests were made in the account, and balances were struck showing the exact amount of this debt of their association to Rev. Mr. Colton, from time to time and many times, and they were published or stated publicly to the congregation on the Sabbath, when all the members are supposed to have been present.

Is it reasonable to doubt after all these publications of it that there were any members who did not know the amount of this indebtedness, not once only, but many times? All the members must be presumed to take a personal interest in the financial concerns of the association, and to take cog-

nizance of these publications of their trustees and agents on the subject of their own indebtedness from time to time. They did know the amount of this claim down to the time of the final settlement of 1883, and then the settlement consisted merely in balancing the accounts on the books, and in thus fixing the amount to be paid. They never objected to this claim until after that, and therefore tacitly assented to it. They are presumed to have known of the appointment of the committee to adjust it, and it was their committee. The trustees were their trustees, and those deputed to settle with the Rev. Mr. Colton on the 10th of March, 1883, were deputed by themselves to make the settlement, and why were they not their authorized agents to act for them in doing so? In all other cases such authority would be deemed sufficient. We cannot but think that the assent, ratification, and authority conferred were amply proved. It is too plain a case for doubt or cavil. The members stand in the place of a corporation, and act by their own officers and agents. The debt in the first place is their debt, and they are presumed to know all about it. The books kept by their secretary were their books, and they are presumed to know what accounts are on them, and the state of such accounts. But here the evidence, aside from presumptions and inferences, is ample to show ratification as well as the authority of those who made the settlement. The learned counsel of the appellants have cited no case in conflict with these principles, and the law governing this case is elementary and needs no authorities. It was clearly and correctly stated by the learned circuit judge in his instructions to the jury.

*By the Court.*— The judgment of the circuit court is affirmed.