ROBBINS COMPANY, Respondent, v. COOK et al, Appellants.

(173 N. W. 445).

(File No. 4466. Opinion filed June 25, 1919).

1. Contracts—Purchase of Souvenirs, by Voluntary Unincorporated Association—Non-statutory Appointments by Governor, Panama Pacific Exposition—Appointee, Whether Personally Liable— Non-liability of State.

Where defendants voluntarily associated themselves together under the name of the South Dakota Panama-Pacific Exposition Commission for the purpose of promoting a suitable ex-

hibit to advertise this state at the Panama-Pacific Exposition, one of the methods determined upon for raising money to finance such exhibit being through purchase and sale of souvenir coins, etc., and plaintiff, engaged in manufacturer of souvenir coins, etc., sent a representative to negotiate for the sale to defendants of a quantity of such goods, and defendants, through one of their number authorized by the others, entered into a contract whereby plaintiff was to and did furnish a quantity of brooches, pins, and badges, 'for which defendants refused to pay; **held,** that defendants' contention that they were acting "for the state in aid of a patriotic purpose," and that it was well known by all parties that they had no legal authority to bind the state, is untenable; and while defendants were induced to organize as such association because of a so-called "appointment" of the governor, yet no claim is made that any party understood such appointment was authorized by any law of the state; and defendants are in the position of having acted entirely on their own initative, and having contracted in the name of such association, and not in the name of the state; and there being no evidence that it was claimed that plaintiff should look to the proceeds of the sale of souvenirs for its pay, or that defendants ever contemplated a liability on the part of the state, therefore no rule of fair dealing, or of law, can excuse them from paying plaintiff for the goods, and defendants were liable therefor.

2.  Contracts—Voluntary Associations, Two Classes Defined, re Liability of Members.

Conceding that there are two classes of voluntary associations—one where the associations are organized for profit, the other where they are organized without hope or expectation of profit—yet the only difference, as regards the liability of the members, is that, in associations of the first class the members are in legal effect partners and individually liable for debts contracted in name of the association by other members, while in associations of the second class, liability of individual members is controlled by the law of agency, and to hold a member liable it must be shown he actually or constructively assented to or ratified the contract upon which liability is predicated.

Polley, J., dissenting.

Appeal from Circuit Court, Brown County. Hon. Thomas L. Bouck, Judge.

Action by the Robbins Company, a corporation, against W. C. Cook and others, to recover the price of merchandise sold by plaintiff to defendants. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Affirmed.

*C. O. Newcomb, T. J. Spangler,* and *E. E. Wagner,* for Appellants.

*Campbell & Walton,* for Respondent.

(1) To point one of the opinion, Appellants cited:

Miller v. Ford (S C.) 55 Am. Dec. 687-691; McCurdy v. Rogers (Wis.) 91 Am. Dec. 468-470; Thilmany v. Iowa Paper Co. (Ia.) 79 N. W. 261; McCabe v. Goodfellow (N. Y.) 17 L. R. A. 204; Codding v. Munson (Neb.) 72 N. W. 846.

Respondent cited:

5 C. J. 1363; Ash v. Guie, 97 Pa. State 493, 39 Am. Rep. 818; Heath v. Goslin, 80 Mo. 310, 50 Am. Rep. 505; Evans v. Lily & Co., 95 Miss. 58, 48 So. 612, 21 Ann. Cases 1087; Lynn v. Commercial Club of Witten, 31 S. D. 401, 141 N. W. 471; Alkahest Lyceum System v. Featherstone (Miss.), 74 So. 151; Elwell v. Tatum (Tex.), 24 S. W. 71; Wilcox v. Arnold, 162 Mass. 577, 39 N. E. 414; Fredendall v. Taylor, et al., 26 Wis. 286; Lumber Co. v. Church, 6 S. D. 498; Lynn v. Commercial Club of Witten, 31 S. D. 401.

WHITING, J. Action brought to recover the agreed selling price of certain goods, wares, and merchandise alleged to have been sold by plaintiff to defendants. At the close of the trial, both parties moved for a directed verdict, the trial court withdrew the case from the jury, entered findings of fact and conclusions, and rendered judgment thereon in favor of plaintiff. From such judgment and an order denying a new trial the defendants have appealed.

The following facts found by the trial court are absolutely undisputed: The defendants voluntarily associated themselves together under the name and style of the South Dakota Panama-Pacific Exposition Commission for the purpose of promoting a suitable exhibit to advertise this state at the Panama-Pacific Exposition. One of the methods determined upon for raising money to finance such exhibit was through the purchase and sale of souvenier coins, pins, brooches, etc. Plaintiff, a corporation engaged in the manufacture of such goods, being notified of a prospective meeting of such association and requested to submit prices on coins, pins, and badges, sent a representative to such meeting. At this meeting these defendants were present. Believing that they could make a success of their contemplated

scheme, defendants, through one of their number fully authorized by the others, entered into a contract whereby plaintiff was to and did furnish a large number of brooches, pins, and badges, for which defendants have refused to pay. No question is raised as to the good faith of any of the parties. Defendants failed in their efforts to make a success of this plan for raising money—they disposed of but a small part of the goods purchased of plaintiff.

[1] It is the contention of defendants that they were acting "for the state in aid of a patriotic purpose," and that it was well known by all parties that they had no legal authority to bind the state. They have cited numerous authorities holding that one is not personally liable who purports to act as agent for and to bind a principal by contract where the party with whom he contracts knows that he is not such agent and has no authority to bind his alleged principal. And there can be no question but what if defendants had contracted in the name of the state of South Dakota, purporting to act as agents of such state, the plaintiff, if aware of their lack of authority, could not hold them personally liable; but this rule of law and the authorities cited have not the remotest bearing upon the situation presented by the facts of this case. It is the law fixing the liability of members of a voluntary association that governs under the facts of this case, and not the laws relating to liability of unauthorized agents. While it is true that the defendants were induced to organize as such association because of a request or socalled "appointment" of the then Governor of this state, no claim is made that any party hereto understood that such appointment was authorized by any law of this state. The defendants are exactly in the same position as though they had acted entirely on their own initiative. The defendants, prompted by the best motives, undertook to devise some means by which this state would be properly represented at such exposition; and to such end they contracted, not in the name of the state, but in the name that they had assumed for such voluntary association. It is certainly true that they fully expected, as undoubtedly did the plaintiff, that they, as had like bodies in other states, would be able to make a success of the plan adopted and would be able to pay for the goods purchased out of the proceeds of the sale thereof; but

there is no evidence whatsoever to support any claim that it was agreed that plaintiff should look to the proceeds of the sale of these buttons for its pay—a defense pleaded by defendants, but now clearly abandoned because not supported by a scintilla of evidence. It is perfectly clear that defendants never contemplated a liability on the part of the state. It might well be asked: Who did they suppose were buying these goods? The answer is obvious: Themselves. While it is a matter for regret that these defendants must stand the loss resulting from their failure to successfully carry out their plans, there is absolutely no rule of fair dealing among men, and hence no rule of law, that can excuse defendants from paying plaintiff for the goods purchased by them.

[2]   Defendants contend that this case is to be distinguished from the cases of Winona Lumber Co. v. Church, 6 S. D. 498, 62 N. W. 107, and Lynn v. Commercial Club, 31 S. D. 401, 141 N. W. 471, in that, in this case, the defendants had absolutely no pecuniary benefit in view. Without suggesting the class to which the above cases belong, we concede there are two classes of voluntary associations—one where the associations are organized for profit, the other where the associations are organized without any hope or expectation of profit. But the only difference as regards liability of the members is that, in associations of the first class, the members are, in legal effect, partners and individually liable for debts contracted in the name of the associations by other members; while, in associations of the second class, the liability of the individual members is controlled by the law of agency, and to hold a member liable it must be shown that he actually or constructively assented to or ratified the contract upon which liability is predicated. 5 C. J. 1363; Evans v. M. C. Lilly & Co., 95 Miss. 58, 48 South. 612, 21 Ann. Cas. 1087, and notes in 21 Ann. Cas. 1088-1092; Heath v. Goslin, 80 Mo. 310, 50 Am. Rep. 505; Sheehy v. Blake, 72 Wis. 411, 39 N. W. 479; Id., 77 Wis. 394, 46 N. W. 537, 9 L. R. A. 564; Willcox v. Arnold, 162 Mass. 577, 39 N. E. 414; Clark v. O'Rourke, 111 Mich. 108, 69 N. W. 147, 66 Am. St. Rep. 389; Burton v. Grand Rapids School Furniture Co., 10 Tex. Civ. App. 270, 31 S. W. 91. The authorities are unanimous in holding that, under facts such as this case presents, the defendants would be liable. As peculiarly in point,

see Clark v. O'Rourke, Heath v. Goslin, and Willcox v. Arnold, supra.

The judgment and order appealed from are affirmed.

POLLEY, J. (dissenting). I am unable to agree with the majority opinion in this case. I am aware of the rule of law that, "when an agent contracts in excess of his authority, or acts without authority, or assumes to have authority when he has none, or, for any reason, fails to bind his principal, he is himself bound"; but to this rule there are many exceptions. Where a party dealing with a reputed agent knows the extent of the agent's authority, or lack of authority, and knows that he cannot bind the principal unless such principal ratifies the contract, then the agent does not become personally liable. In order to hold the agent liable in such cases, the party dealing with him must have been ignorant of the agent's want of authority and must have acted upon the faith of the representations, express or implied, that the professed agent had the authority assumed. Newport et al. v. Smith, 61 Minn. 277, 63 N. W. 734. When the person dealing with a supposed agent agrees to look to the proceeds of some particular fund for the satisfaction of an obligation, or where the circumstances are such as to disclose an intention to rely upon the proceeds of such fund for satisfaction of an obligation, then such agent will not be held personally liable. Codding v. Munson, 52 Neb. 580, 72 N. W. 846, 66 Am. St. Rep. 512. And there is a distinction between associations formed for pecuniary gain and those formed for a public or charitable purpose. McCabe v. Goodfellow, 133 N. Y. 89, 30 N. E. 728; 17 L. R. A. 204.

"When public agents, in good faith, contract with parties having full knowledge of the extent of their authority, or who have equal means of knowledge with themselves, they do not become individually liable, unless the intent to incur personal responsibility is clearly expressed; although it should be found that, through ignorance of the law, they may have exceeded their authority." 21 R. C. L. 919.

In order to hold a public official personally liable while acting within the scope of his apparent authority, the intent to become personally liable must be expressly stipulated. McCurdy v. Rogers, 21 Wis. 197, 91 Am. Dec. 468; Miller v. Ford, 4 Rich.

(S. C.) 376, 55 Am. Dec. 687. And where a party dealing with a supposed agent has knowledge of such agent's lack of author- ity to bind the reputed principal, or of facts sufficient to put him upon inquiry, and he fails to avail himself of such knowledge, he cannot hold such agent personally. Thilmany v. Iowa Pape Co., 108 Iowa, 357, 79 N. W. 261, 75 Am. St. Rep. 259.

In the majority opinion, it is said that defendants voluntarily associated themselves together. This statement implies that de- fendants acted upon their own initiative. But this they did not do. The Governor of this state appointed defendants as members of a commission known as the Panama-Pacific Exposition Com- mission of South Dakota. The purpose of creating the commis- sion was to provide ways and means to erect a suitable building and to procure suitable exhibits at the Panama-Pacific Exposition, to be held in the city of San Francisco during the year 1915. There was no law creating the commission; therefore it had no legal existence. But, shortly after the appointment, the defend- ants, acting as such commission, had certain negotiations with the plaintiff company. A meeting of the commission was held, at which a representative of plaintiff was present and an order for a considerable number of badges and buttons was placed with plaintiff—the idea being that the commission should resell said badges and buttons for several times their cost and, in this way, create a fund from which to pay for such badges and buttons and still leave sufficient funds to procure the building and exhib- its at the said exposition. This plan was suggested by plaintiff's representative. He represented to defendants that the plan had succeeded in one or two other states, which he named, and assur- ed defendants that the "buttons could easily be paid for out of the sale." He further told defendants that the difference be- tween the cost price and selling price of the buttons would fur- nish a fund to procure the exhibit at the Exposition, "and pay for the buttons"; that it would take only a small percentage of the receipts from the sales to take care of the buttons. In fact, he said everything that could be said short of an express agree- ment to look solely to the fund to be obtained from sales of the buttons for payment for same. At the trial, this same representa- tive testified that—

"It was my impression while there [at said meeting] that the

gentlemen whom I met, constituting this commission, were a mere commission representing the state in this matter, and that this brooch and the buttons, and other things that were mentioned, were for the purpose of enabling the state of South Dakota to be represented at the Panama-Pacific Exposition."

It is a further fact that, when the goods were shipped, they were shipped to Charles McCaffree, in care of the Panama-Pacific Exposition Commission. Mr. McCaffree was the Commissioner of Immigration for the state of South Dakota.

From these undisputed facts, it is plain that defendants were acting solely in a representative capacity as members of the said commission, and with no intention of becoming personally liable; that plaintiff knew this fact; and that there is nothing in the circumstances of the transaction to disclose any intention on the part of the plaintiff, or of the defendants, that the latter should become personally liable.

It is said in the majority opinion that—

"There can be no question but that, if defendants had contracted in the name of the state of South Dakota, purporting to act as agents of such state, the plaintiff, if aware of this lack of authority, could not hold them personally liable."

Yet this is exactly what they did do. Plaintiff admitted that it knew that the defendants were acting solely in their capacity as public agents; and plaintiff also knew, or is charged with knowledge, that the commission had no legal existence and could not make a contract that would be binding against the state.

· It is clear to me that, when plaintiff shipped these goods, it had such unbounded faith in the success of the enterprise that it relied wholly upon the fund that was to be derived from the sale of said goods. It assumed the risk of the success of the enterprise, and now, that that venture has proven a failure, it ought not to be allowed to compel the defendants to protect it against loss.

The judgment appealed from should be reversed, and the action dismissed, at plaintiff's cost.