ANSON B. CODDING v. GILES W. MUNSON.

FILED NOVEMBER 4, 1897.    No. 7520.

1. **Non-Existent Principal:** LIABILITY OF AGENT. One who as agent assumes to respect a principal who has no legal existence or status is himself liable. *Learn v. Upstill*, 52 Neb., 271, followed.

2. ———: ———. The foregoing rule is founded upon the presumption that the parties intended to create an enforceable legal obligation, and does not obtain when it appears that a different method of fulfillment was provided, and that the agent was not to be held personally liable.

3. ———: ———: PLEADING: INSTRUCTIONS. When the petition de-

clares only upon a contract with the defendant in his own behalf and his promise to pay, it is error to submit to the jury the theory that he was agent for another and had received from his principal money to the use of plaintiff.

ERROR from the district court of York county. Tried below before BATES, J. *Reversed.*

*F. C. Power* and *S. H. Sedgwick*, for plaintiff in error.

*Gilbert Bros.*, contra:

A person contracting as agent will be personally liable, whether he is known to be an agent or not, in all cases where he makes the contract in his own name, or voluntarily incurs a personal responsibility, either express or implied. (Story, Agency [7th ed.], sec. 269; *Hewes v. Andrews*, 20 Pac. Rep. [Colo.], 338.)

The law does not exempt an agent from personal responsibility when he chooses by his own act or contract voluntarily to incur it, or when from his own conduct or the form of the act or contract it is necessarily implied or created by operation of law. (*Bell v. Teague*, 3 So. Rep. [Ala.], 861; *Farmers Co-operative Trust Co. v. Floyd*, 26 N. E. Rep. [O.], 110; *Moore v. Booker*, 62 N. W. Rep. [N. Dak.], 607.)

An agent is personally liable where there is no responsible principal, or where the principal has no legal existence. (1 Am. & Eng. Ency. of Law, 402; *Button v. Winslow*, 53 Vt., 430; *Blakely v. Bennecke*, 59 Mo., 193; *Eichbaum v. Irons*, 6 W. & S. [Pa.], 67; *Edings v. Brown*, 1 Rich. [S. Car.], 255; *Steele v. McElroy*, 1 Sneed [Tenn.], 341; *Comfort v. Grasham*, 54 N. W. Rep. [Ia.], 242; *Lewis v. Tilton*, 19 N. W. Rep. [Ia.], 911.)

IRVINE, C.

Munson sued Codding, alleging that he had sold and conveyed to him certain land for the price of $10,000, that $9,750 thereof had been paid, and praying judgment for the remaining $250. The answer was a general denial.

The plaintiff recovered and the defendant brings the case here by petition in error.

The evidence discloses that there were held several open meetings of citizens of York for the purpose of securing the location there of an institution for the care of orphans, under the patronage of the Woman's Home Missionary Society of the Methodist Episcopal Church. It was understood that a gift of about $10,000 would be necessary to accomplish the purpose. Both plaintiff and defendant attended the meetings and contributed to the undertaking. It was determined that the donations should be in the form of negotiable promissory notes, made to the order of a trustee to be designated for that purpose. A committee appointed at one of the meetings, under power possessed or assumed by it, designated the defendant Codding as trustee. It would seem that the institution was formally located at York; but instead of giving the notes or their proceeds to the society, the land of plaintiff was purchased and conveyed to "Anson B. Codding, Trustee," he in turn conveying to the Missionary Society. Codding indorsed without recourse a number of subscription notes to Munson, and these notes, together with other items accepted by Munson, made up the sum of $9,750 which Munson admits receiving. It is not contended that the price was other than claimed, or that the remainder was paid. The only question is as to Codding's personal liability therefor. So far as has been stated, the evidence is quite clear and free from conflict. As to the extent of Codding's authority, if he possessed any, and the nature of the transactions between him or other citizens of York on the one side and Munson on the other, with reference to the purchase, the evidence is exceedingly vague and leaves much to inference, if not to conjecture. Still, it is upon the last question that the case must be made chiefly to turn.

It is the general rule that one who assumes to act as agent for a principal who has no legal status or existence renders himself individually liable on contracts so mad·. (*Learn v. Upstill*, 52 Neb., 271.) This doctrine receives

its most frequent application in cases like the present, where a person or committee incurs obligations as the result of instructions given by a body gathered together informally for a special purpose, and possessing no definite membership or continued power of existence. The rule is founded upon a presumption of fact, and is not the expression of any positive or rigid legal principle. The presumption referred to is that the parties to a contract contemplate the creation of a legal obligation capable of enforcement, and that, therefore, it is understood that the obligation shall rest on the individuals who actively participate in the making of the contract, because of the difficulty in all cases, the impossibility in many, of fixing it upon the persons taking part in or submitting to the action of the evanescent assemblage. If, however, the person with whom the contract is made expressly agrees to look to another source for the performance of its obligations, or if the circumstances be such as to disclose an intention not to charge the agent, as where the other agrees to accept the proceeds of a particular fund, there is no longer reason to indulge the presumption, and it may be rebutted by proof of such facts. This qualification of the general rule is clearly indicated in *Learn v. Upstill*, and is recognized by nearly all the cases discussing the general subject. (See cases cited by Judge NORVAL in *Learn v. Upstill;* also *Heath v. Goslin*, 80 Mo., 310; *Button v. Winslow*, 53 Vt., 430; *Comfort v. Graham*, 54 N. W. Rep. [Ia.], 242.)

Applying these principles to the case at bar, the evidence would raise *prima facie* the presumption upon which the general rule is based. On the other hand, it was sufficient to justify the inference that the plaintiff did not look to defendant personally, but was to receive merely the subscription notes or their proceeds. The instructions should have stated the law as we have indicated it and submitted to the jury the issues bearing thereon. Instead thereof the court charged as follows: "If you find from the evidence that Codding was in this

transaction only agent and trustee for the Mothers' Jewels Home, and that all his transactions as such agent and trustee have been performed in good faith, then you should find for the defendant." This was erroneous, because it made Codding's release from liability depend upon his action as agent for the Home, and his performing his duty in good faith. It was not claimed that he was agent for the Home, but for the citizens of York. This principal having no legal status, the instruction should have been that Codding was liable unless the agreement was that Munson was to look solely to the subscriptions. The error was prejudicial to the defendant, because there was no evidence of an agency such as the instruction submitted, and a verdict for plaintiff was therefore required without regard to that phase of the evidence which, if properly submitted, might have induced a different finding.

The court also charged as follows: "If you find from the evidence that Codding, defendant, has sufficient funds in his hands of the Mothers' Jewels Home, or that there was placed in his hands sufficient funds to pay Munson in full for his lands, then you should find for the plaintiff." While some evidence of that character appeared over defendant's objection, it was not relevant to the issues and should not have been submitted to the jury. The petition was not framed on the theory that Munson had sold to third parties, and that Codding had received from them moneys to his use. It declared solely on a contract direct with Codding and a promise by him to pay.

It is contended by plaintiff that the contract was made by Codding in his own name, that he thereby made himself liable, and the judgment should for that reason be affirmed. No doubt a contract for the sale of land, if made by an agent in his own name, will bind him personally even though he describe himself therein as agent and disclose his principal. (*Morgan v. Bergen*, 3 Neb., 209.) But in this case we have no contract so made. Although

the addition of the word "trustee," in the deed to Codding, be *designatio personæ* merely, still that deed is not the contract sued upon. It does not follow that the grantee named in a deed is liable for the purchase money.

REVERSED AND REMANDED.