**REDDEN et al. v. CAPPS et al.   (No. 2295.)**

Court of Civil Appeals of Texas.   El Paso.
March 14, 1929.

Edward Yarbrough, of McCamey, for appellants.

H. Womack, of McCamey, for appellees.

HIGGINS, J.   This suit was brought by Redden and Brown against G. F. Capps and four other persons to recover $350.  It was alleged the plaintiffs contracted with defendants to remove 174 yards of dirt and stone from a hill on a newly constructed road from McCamey in Upton county to the Yates oil field in Pecos county for the agreed price of $350; that plaintiffs had performed the contract, and defendants had refused to pay.

Defendants answered by general denial and special plea to this effect, viz.:

"* * * That at the time of the matters and things herein complained of, they as a body was appointed by the citizens of and around McCamey, Texas, to represent the public general in the construction of a road from McCamey, Texas, to the Yates Oil Field, and as such committee, that is, acting for the public generally in and around McCamey, Texas, they engaged and employed the plaintiffs herein to do and perform certain labor and services in connection with the construction of said road; that at the time of said employment the plaintiffs well knew and understood that the defendants herein composed a committee who represented the public as aforesaid, and that the money with which to pay for said services was to be donated by the said public.

"That none of these defendants, either singly or collectively made any contract with the plaintiffs whereby they, or any of them were to be bound for the payment of the sum sued for herein, all of which the plaintiffs well know; that as aforesaid, the work contracted by plaintiffs to be done, was on a public road as aforesaid from McCamey, Texas to the Yates Oil Field; that these defendants have no pecuniary interest on said road any more than any other individual who may chance to use same in going to and from points located on said road, and do not own or claim any interest in or to any of the land over which said road runs.

"That these defendants nor either of them have received any fruits or revenue from the labor performed; if any has been performed by plaintiffs in connection with said road, and that in so far as they are concerned individually or collectively, there is and was not any consideration upon which they could or should be bound, that as aforesaid, they do not own any of the land over which said road runs, that they nor either of them are not road contractors or builders, but was acting as aforesaid for the public free gratis and without pay and was furnishing their expenses in addition thereto.

"Wherefore defendants and each of them pray that the plaintiffs take nothing as against them, and that they go hence and recover their costs in this behalf expended."

In response to peremptory charge, verdict was returned and judgment rendered for defendants.

Brief has not been filed by appellee, and we are not advised of the theory upon which the peremptory charge was given, but from the special plea of the defendants and the

record as a whole it would seem to have been given upon the theory that the defendants were not personally liable upon the contract of employment because they were acting in a representative capacity as a committee in behalf of the general public served by the road.

■ The general rule is that, when an agent, acting within the scope of his authority, enters into a contract for a disclosed principal, such agent does not become personally liable upon the contract, in the absence of an agreement so to be.

But this rule assumes the existence of a legally competent existing principal, and is inapplicable when an agent undertakes to contract for a principal which has no legal status or existence and which can incur no enforceable liability.

In this state it has been held that, in the case of unincorporated religious and eleemosynary associations, the members and managing committees who incur liability, assent to it, or subsequently ratify it, become personally liable. Burton v. Grand Rapids, etc., 10 Tex. Civ. App. 270, 31 S. W. 91; Summerhill v. Wilkes, 63 Tex. Civ. App. 456, 133 S. W. 492; Mood v. M. E. Church (Tex. Civ. App.) 289 S. W. 461; (Tex. Com. App.) 296 S. W. 506; 300 S. W. 30.

In 1 Mechem on Agency (2d Ed.) § 1390, it is said:

"Thus where a committee, appointed by a political meeting for that purpose, ordered a public dinner for the party, it was held that the members were personally liable. There was here no legal body to be bound. It did not rise to the dignity of a voluntary society or a club, for, said the court, 'a club is a definite association organized for indefinite existence; not an ephemeral meeting for a particular occasion, to be lost in the crowd at its dissolution. It would be unreasonable to presume that the plaintiff agreed to trust to a responsibility so desperate, or furnish a dinner on the credit of a meeting which had vanished into nothing. It was already defunct; and we are not to imagine that the plaintiff consented to look to a body which had lost its individuality by the dispersion of its members in the general mass."

In Lewis v. Tilton, 64 Iowa, 220, 19 N. W. 911, 52 Am. Rep. 436, it was said:

"It is insisted that the lease shows that credit was extended to the club, and that the contract was made with it; that the principal was named, and therefore the defendants cannot be made individually liable. This line of argument possibly would be conclusive if there was a principal. But there is none. The club is a myth. It has no legal existence, and never had. It cannot sue or be sued. The defendants contracted in the name of a supposed principal; that is, they claim there was a principal for whom they were acting, but it now appears that there was no principal known to the law. But, under the

allegations of the amended petition, it should be assumed, we think, that there was, as a matter of fact, a body of men associated together for a benevolent purpose, who had assumed the name above stated, for the avowed purpose, by their united efforts, of suppressing intemperance. There is, however, some doubt in our minds whether it can be said that the plaintiff extended credit to an organization that had no legal existence. As the law does not recognize such an organization, we are at a loss to know how or why it can be said as a matter of law that the plaintiff contracted with and extended credit to a mere myth. In legal parlance, the organization cannot be named. It has no habitation or place of abode."

In Codding v. Munson, 52 Neb. 580, 72 N. W. 846, 66 Am. St. Rep. 524, it is said:

"It is the general rule that one who assumes to act as agent for a principal who has no legal status or existence renders himself individually liable on contracts so made. Learn v. Upstill, 52 Neb. 271 [72 N. W. 213]. This doctrine receives its most frequent application in cases like the present, where a person or committee incurs obligations as the result of instructions given by a body gathered together informally for a special purpose, and possessing no definite membership or continued power of existence. The rule is founded upon a presumption of fact, and is not the expression of any positive or rigid legal principle. The presumption referred to is that the parties to a contract contemplate the creation of a legal obligation capable of enforcement, and that, therefore, it is understood that the obligation shall rest on the individuals who actively participate in the making of the contract, because of the difficulty in all cases, the impossibility in many, of fixing it upon the persons taking part in or submitting to the action of the evanescent assemblage."

See, also, Fredendall v. Taylor, 23 Wis. 538, 99 Am. Dec. 203; Clark v. O'Rourke, 111 Mich. 108, 69 N. W. 147, 66 Am. St. Rep. 389; Cases cited in 31 Cyc. note 42, p. 1548.

The authorities noted, and others which might be cited, show that the members of the committee in the present case who actually employed the plaintiffs to remove the dirt and stone, or authorized Capps to do so, and those of such committee who subsequently assented thereto or ratified such employment, became personally liable upon the contract.

The plaintiff Brown testified he made the contract with the defendant Capps. The latter testified he was chairman of the committee, and admitted employing plaintiffs to do the work. So far as he is concerned, his own testimony shows he became personally liable. It is true he testified he did not tell plaintiffs he would be personally liable upon the contract, but this does not relieve him. In order to relieve him of such liability, there must have been an agreement to that effect.

672

■ As to the other defendants, it does not appear they were parties to the contract, but under the authorities they became liable thereon if they authorized Capps to make it, or subsequently assented thereto or ratified the same.

Reversed and remanded.