E. HALDEMAN, Appellant, v. W. D. ADDISON, Appellee.

No. 43247.

FEBRUARY 18, 1936.

Watson & Watson, for appellant.

A. V. Proudfoot, for appellee.

HAMILTON, J.—Appellee devotes considerable time in his argument to a discussion of the question of the right of defendant to have the cause transferred to equity for the purpose of reformation, citing and quoting at length from numerous authorities bearing on this question. The trial court transferred the cause to equity for the purpose of reformation, and the evidence on this point was first introduced and at the conclusion of the testimony bearing upon the question of reformation the parties consented to trial of the main issue to the court, waiving a jury, with the further agreement that for the purpose of determining the main issue in the case, all the evidence theretofore received might be considered readmitted so far as applicable in the trial of the main issue, subject to the objections made thereto at the time of its introduction. The action was against W. D. Addison, personally. Addison was the superintendent of the Pleasantville Epworth League at the time the note in question was executed. The signature on the note appeared as follows:

"Pleasantville Epworth League,
"E. L. Supt. W. D. Addison."

The purpose of the reformation was to show that Addison signed the note in a representative capacity only. The trial court made no specific finding on the question of reformation, but the result reached is equivalent to a finding in favor of the defendant on this issue. As we view the law applicable to the situation disclosed by the record in this case, the question of whether or not the defendant signed in a representative capacity is not controlling, the real question being, even though he signed in a representative capacity only, the Pleasantville Epworth League being an unincorporated association without legal entity, is the defendant bound, notwithstanding he executed the note as an officer of said association? Counsel on both sides are to be commended for their frankness in presenting the question fairly to the court, as well as the trial court, who, in a clear and concise statement of his findings in a written opinion, stripped of all unnecessary verbiage, very ably sets forth his views, all of which has been of great assistance to this court in determining the question involved.

The note bears date of November 28, 1923, and is for $210, due on November 28, 1924, payable in installments. It contained a conditional sales contract provision to the effect that "title to the said Piano shall not pass from, but shall be and remain in said E. Haldeman Piano Store until this note and interest are fully paid." It also contained a further provision to the effect that in case of default plaintiff could take possession of said piano and sell the same on terms therein provided. Credit of $50, and another credit for $25 are indorsed on the note.

As we understand the general rule of law to be, where a member of an unincorporated association, such as the Epworth League in this case is conceded to be, contracts in the name of such supposed principal, which has no legal existence and cannot sue or be sued, that such member is himself personally bound. In the case of Lewis v. Tilton et al., 64 Iowa 220, 19 N. W. 911, 52 Am. Rep. 436, the contract was made in the name of the Ottumwa Temperance Reform Club and was signed, "Executive Committee of the Ottumwa Temperance Reform Club," and under this appeared the individual names of the committee. It was insisted in that case that the contract showed that credit was extended to the club, and that the contract was made with the club, that the principal was named and therefore the indi-

vidual members of the committee could not be made individually liable. The court said:

"This line of argument, possibly, would be conclusive if there was a principal. But there is none. The club is a myth. It has no legal existence and never had. It cannot sue or be sued. The defendants contracted in the name of a supposed principal; that is, they claimed there was a principal for whom they were acting, but it now appears there was no principal known to the law."

The court further said in reference to the liability of the members of the committee:

"All are included in such liability who assented to the undertaking, or subsequently ratified it. * * * They certainly represented they had a principal for whom they had authority to contract. They, for or on behalf of an alleged principal, contracted that such principal would do and perform certain things. As we have said, there is no principal, and it seems to us the defendants should be held liable, and that it is immaterial whether they be so held, because they held themselves out as agents for a principal that had no existence, or on the ground that they must, under the contract, be regarded as principals, for the simple reason that there is no other principal in existence."

The question was also before the court in Reding v. Anderson, 72 Iowa 498, 34 N. W. 300, and in passing upon this legal principle the court said:

"The person making a contract in the name of such an association is personally bound thereby, and the members of the association assenting to the contract are bound in the same way."

Likewise, in the case of Comfort v. Graham, 87 Iowa 295, 298, 54 N. W. 242, 243, where the defense was that defendant acted in a representative capacity only, this court said, in reference to this identical question:

"It clearly appears that the order which defendant claimed to represent was an unincorporated, voluntary association, and hence he represented no principal which the law recognized; hence, if it be conceded that defendant undertook to act for such an association, he is personally liable."

There can be no dispute about this principle of law, which is well settled by the above authorities in this state.

It is equally as well settled that in order to avoid personal liability, one who has contracted in the name of such a principal has the burden of showing that there was an agreement with the person with whom the contract was made that he was not to be personally bound. In the case of Comfort v. Graham, supra, this court said:

"If the defendant sought, as he did, to shield himself from personal liability because the contract for services was made in a representative capacity, it was incumbent on him to establish that fact."

The case of Andrew v. Pella Golf Club, 217 Iowa 577, 579, 250 N. W. 709, 710, is squarely in point on this question. In that case, Andrew brought suit against the Pella Golf Club, an unincorporated association, on a note which was signed, "Pella Golf Club, C. Smorenburg, Treas." Plaintiff sued the golf club and also Smorenburg. In that case the evidence shows without dispute that Smorenburg *refused* to sign the note until assured by the cashier of the bank to which the note was given that his execution of the note in the manner in which it was executed should impose *no personal liability upon him*. The court said:

"In this situation there was no liability on the part of Smorenburg on account of the fact that the club was not a legal entity. Codding v. Munson, 52 Neb. 580, 72 N. W. 846, 66 Am. St. Rep. 524."

In this Nebraska case, Codding v. Munson, supra, the evidence disclosed that there were held several special meetings of citizens of York, Nebraska, for the purpose of securing the location there of an institution for the care of orphans under the patronage of the Woman's Home Missionary Society of the Methodist Episcopal Church. The money necessary was to be obtained by subscriptions in the form of negotiable promissory notes made payable to the order of a trustee to be designated for that purpose. Codding was designated as such trustee. The proceeds of these notes were used to purchase real estate of the defendant, Munson. The land was conveyed to "Anson B. Codding, Trustee," and he in turn conveyed the same to the mission-

ary society. Codding indorsed without recourse these subscription notes to Munson. These notes with other items accepted by Munson made up the sum of $9,750, which Munson admits receiving. The price was $10,000, and Munson brought suit for the remainder of the purchase price against Codding. The court said:

"It is the general rule that one who assumes to act as agent for a principal who has no legal status or existence renders himself individually liable on contracts so made. * * * This doctrine receives its most frequent application in cases like the present, where a person or committee incurs obligations as the result of instructions given by a body gathered together informally for a special purpose, and possessing no definite membership or continued power of existence. The rule is founded upon a presumption of fact, and is not the expression of any positive or rigid legal principle. The presumption referred to is that the parties to a contract contemplate the creation of a legal obligation capable of enforcement, and that, therefore, it is understood that the obligation shall rest on the individuals who actively participate in the making of the contract, because of the difficulty in all cases—the impossibility in many—of fixing it upon the persons taking part in or submitting to the action of the evanescent assemblage. If, however, the person with whom the contract is made expressly agrees to look to another source for the performance of its obligations, or if the circumstances be such as to disclose an intention not to charge the agent, as where the other agrees to accept the proceeds of a particular fund, there is no longer reason to indulge the presumption, and it may be rebutted by proof of such facts. [Citing cases]

"Applying these principles to the case at bar, the evidence would raise prima facie the presumption upon which the general rule is based. On the other hand, it was sufficient to justify the inference that the plaintiff did not look to defendant personally, but was to receive merely the subscription notes, or their proceeds. The instructions should have stated the law as we have indicated it, and submitted to the jury the issues bearing thereon."

It appears that the court did not embody this principle in the instructions to the jury. The court further says:

"This principal having no legal status, the instruction should have been that Codding was liable unless the agreement was that Munson was to look solely to the subscriptions."

In that case the plaintiff recovered, and the case was reversed because of the giving of the erroneous instructions.

The trial court in the case at bar bases his decision on his finding that there was sufficient evidence to bring this case within the exception to the general rule. We quote from the written opinion filed by the trial court:

"The court is not insensible to the holdings of our Supreme Court where an agent purporting to act for a principal which has no existence is himself liable as a principal, nor is he insensible to the theory of law upon which those rulings are made, but there comes a case occasionally where, by reason of the very facts themselves testified to upon the witness stand are of such a character that the Court feels and finds that the parties themselves treated the transaction in a different way and manner, both in fact and in law, from what the Supreme Court has held to be the rule governing such cases. And the court is of the opinion that this is one of them."

We have carefully read and considered the evidence in the light of the foregoing pronouncements of our court and of other courts upon this subject, and we are unable to find from the evidence proof of any facts that takes this case out of the general rule. In other words, it does not appear from the evidence that there was any agreement whatsoever that the defendant was not to be personally bound. It is not enough to show that the plaintiff knew the piano was being purchased for the Epworth League or that defendant said to the plaintiff that the league expected to pay for the piano out of funds to be raised by socials, etc. The very fact that the contract is executed in the name of the association connotes all this. Neither does the fact that plaintiff in good faith attempted to collect the note from the association, or the church of which the league is an auxiliary society, establish such agreement. The defendant had moved away from the community and it was perfectly natural for plaintiff to look to the association for which the piano was purchased for his pay. Both plaintiff and defendant testified that there was nothing said either pro or con as to whether defendant was or was not

to be held personally. In the absence of any statement on the subject, how can it be said that the minds of the parties met on an agreement or understanding that defendant was not to be held personally? In the absence of such proof, the law steps in and settles the matter for the parties. It may be conceded that both of these parties had the thought in their minds at the time this piano was purchased and this note given that it was the obligation of the league and not the obligation of the defendant, but neither of them uttered his thoughts. Under such circumstances, how can it be said that there was an understanding or agreement between these parties that defendant was not to be bound, and that the plaintiff would look to the Epworth League or to the funds raised by the Epworth League for satisfaction of this note? No one claims any fraud, waiver, or estoppel. We can see no escape from the conclusion that the case is ruled by our own prior pronouncements regardless of what courts of other jurisdictions have said.

In the case of Emonds v. Termehr, 60 Iowa 92, 14 N. W. 197, cited and relied upon by appellee, the question we have here was not squarely before the court, and the facts in that case are distinguishable from the case at bar. Neither do we think that Code section 9480, which is a part of the negotiable instruments law, has any application to the fact situation in this case. That statute presupposes a principal for whom the party who signs in a representative capacity assumes to act. In this case we have no existing principal recognized by law. There is no dispute over the facts. The defendant testified: ''I don't recall whether he (plaintiff) actually did ask who was the purchaser. I told him I was representing the Epworth League, and that the Epworth League would pay for this piano by various social functions. That they had been wanting to purchase a piano and that the first payment would be made as soon as we had the first entertainment to raise the funds. I believe that was all of the first conversation.'' He then says that the Epworth League took a vote, authorizing him to purchase the piano at the price submitted, and that he again called on the plaintiff in reference to the matter, and he again testifies: ''I told him the Epworth League had decided to buy the piano and that a payment would be made, I believe it was, in January. I believe that covers the conversation.'' He was then asked whether there was anything said by either himself or the plaintiff with reference to his being

personally liable on the note, and he answered: "I don't recall whether he made any statement concerning that or whether I did." The plaintiff testified: "The first time he said he wanted to look at a piano and we showed him a piano and then he said that the Epworth League was figuring on buying a piano. That is the conversation as I remember it. That was all that occurred that first time.

"Q. Was anything said at that time with reference to who should be held responsible if the piano was purchased? A. It wasn't mentioned any more than that they were figuring on buying a piano. * * * The second time that Mr. Addison came in to see me was when the note was signed. * * * He said he had come over to buy the piano and we looked them over again and there wasn't very much said but the piano was sold and he signed the obligation.

"Q. Was there anything said with reference to who was to be responsible for the payment of the note? A. The matter was not mentioned as to who should pay for it."

The trial court, in his findings, said:

"*Just why he* (defendant) *signed his individual name does not appear by any direct testimony.* It does appear, however, that subsequent to the making of said instrument nothing was ever said or done by the plaintiff to hold the defendant liable on said note until just before the same was outlawed by the Statute of Limitations. The plaintiff did take the matter up with the Epworth League; notified them, and did take the matter up with the Board of the Methodist Church of Pleasantville, of which the Epworth League was a part, and asked the Church Board to pay the plaintiff on said note. His whole course of action is indicative that he only looked to the Epworth League for payment of said written instrument, and that before and at the time of the signing of said written instrument, he well knew who was purchasing the said piano and to whom he was to look for payment.

"This court appreciates the fact that he may be going somewhat beyond the strict letter laid down in some of the cases in this state in regard to the liability of the defendant herein, but under all the facts and circumstances surrounding this matter, the court believes it is justified in reaching the conclusion that it does." (Italics ours.)

This is not a case where there is a dispute or conflict over the facts, for there is no dispute concerning the pivotal facts or as to what was said and done. It is a matter of applying the rules of law to the undisputed facts, and even though the action on the main issue was one at law, the judgment of the trial court may be set aside if it finds no support in the record. First Presbyterian Church v. Dennis, 178 Iowa 1352, 161 N. W. 183, L. R. A. 1917C, 1005; Andrew v. Pella Golf Club, 217 Iowa 577, at page 580, 250 N. W. 709.

We are constrained to hold that the able trial court was in error in dismissing plaintiff's petition. The result which we have reached on this branch of the case makes it unnecessary for us to pass on the question as to whether the court erred in dismissing count II of plaintiff's petition. The case is reversed and remanded, with instructions to enter judgment in accordance with this opinion.—Reversed and remanded.

DONEGAN, C. J., and KINTZINGER, MITCHELL, and ALBERT, JJ., concur.