IDA GROVE INDEPENDENT SCHOOL DISTRICT, Appellee, v. IDA COUNTY et al., Appellants.

No. 44731.

1238

June 20, 1939.

Thad S. Snell, Jr., and Bruce M. Snell, for appellee.

Ray G. Walter, County Attorney, for appellants.

SAGER, J.—On June 1, 1935, plaintiff filed with the county auditor of Ida county a claim for the tuition of certain children alleging them to be "Ida County charges and non-residents of this (plaintiff) district and who were moved therein by Ida County." The claim was disallowed and this action resulted.

In 1914, Ida county, Iowa, which for the purposes of this opinion will be spoken of as the sole defendant, bought a tract of 4.66 acres of land adjacent to but without the limits of plaintiff-district. The purpose of said purchase, as stated in the minutes of the county board of supervisors, was to provide a "home for the poor. The Board contemplates the building of two or more houses at once." Several houses were in fact built, but when this was done does not appear. The sizes of them were not given beyond the designation that they were "small". The uses to which they were put by the county, aside from their

occupancies by the families to which reference is made, are not disclosed. Plaintiff says that it was a "county home". The necessity for this contention as a support for plaintiff's demand will appear.

There is no contention in the record that the county in the management of this property observed any of the requirements of chapter 268, Code, 1935. Title was held apparently awaiting the time when the needs of the county would necessitate or make advisable the erection of a county home.

During the school year, September 1934 to May 1935, the children of the Meece, Hanks and Chasteen families lived on this four-acre tract of land under circumstances presently to be narrated. This tract was in the Corwin school district but the children attended plaintiff's school, and it was to recover their tuition that appellee sued. The children attended the plaintiff's school as if they were actually residents of that district with no questions asked, and with no attempt to establish their right to such schooling in a district other than their own, the Corwin district in which they resided. The provisions of section 4274, Code 1935, outlining the method by which a child, resident of one district, may be permitted to attend in another, were totally ignored. Plaintiff's superintendent testified:

"I knew that these children resided in another school township. We did not exclude them from school nor make any arrangements or attempt to make any arrangement with the Corwin Township Board in 1934 and 1935 for their attendance there."

Apparently no claim was ever made against the Corwin district, plaintiff hoping to recover from the county in this cause. Since the residence of these children in another district is admitted, the appellee seeks to sustain its cause by a reference to section 5346, Code 1935, which is as follows:

"Education of children. Poor children, when cared for at the county home, shall attend the district school for the district in which such home is situated, and a ratable proportion of the cost of the school, based upon the attendance of such poor children to the total number of days' attendance thereat, shall be paid by the county into the treasury of such school district, and charged as part of the expense of supporting the county home."

Under the circumstances disclosed, it may well be doubted whether this tract of land owned by the county could even, by that liberal construction of the statute for which plaintiff contends, be called a "county home", but we pass that. Assuming, but not deciding, that this was a county home, could these children in any reasonable view of the testimony before us be said to be "poor children * * * cared for at the county home?" Let the record answer.

The claim so far as it related to the tuition of the members of the Meece family was rejected by the court, and we do not set out the testimony on that point at any length. Meece was a carpenter who had lived within the county for several years. He owned a house but no land, and the county allowed him to put it on this county land until he could acquire a place of his own. Beyond that neither the county nor any of its agencies had anything to do with him or his family.

In that regard, the record with reference to the Hanks family is precisely the same except that that family lived in a house owned by the county, and, in this house, they were permitted to live without paying rent. Recovery was allowed for the tuition of the children of this family, as well as of the Chasteens. Defendant complains, and we think justly so, that these were not "poor children" in any sense, nor were they "cared for at the county home". Monroe Hanks at the time was a man forty years old, married, and for about nineteen years, a resident of Ida county. He had been working five or six years for the county, with the county bridge gang. His family lived with him in the home just spoken of, having been permitted to move into it by the overseer of the poor because he had to move out of a home in which he had been living. He was at that time employed by the county. During the school year of 1934-35, his children went to the plaintiff's school. He kept the children himself, clothed and fed them and if at any time school books were purchased for the children by anyone but himself, he didn't know of it. During all the time he resided in the premises, neither the board of supervisors, nor anyone else representing the county, ever came to inspect the property, to give any orders, or to make any restrictions, rules or regulations of any kind. He was asked:

"Q. You are just as free as can be of them (supervisors)? A. Just like I lived in town."

The identity of Chasteen's children seems to be somewhat in doubt but that situation is described by the chairman of the board of supervisors on cross-examination. He said:

"I know a man named Chasteen living on that county acreage. He was there before I came on the board of supervisors. * * * I have never paid any attention to that family at all.

"Q. Has that family of Chasteens ever received any county aid? A. I think they have. There were several children in this Chasteen family but I never paid any attention to them. I know of only one Chasteen family and when that was spoken of, I considered it had reference to the Chasteen family living on the county acreage."

■ This comprises all the testimony touching the relationship of the county and its agents to these children, and discloses all that might be said to support plaintiff's claim that these were "poor children cared for by the county". Notwithstanding this state of the record, the trial court held in effect that these were such, and that the defendant was liable for their tuition. Of this the county complains, and, we hold, rightly so. All the county did was to provide a home in which these families lived rent-free. It would seem to require no argument to prove that the furnishing of a roof over the heads of these children by the county did not warrant the finding that they were being cared for at the county home. We think that the court was in error in rendering judgment against the county.

■ Appellee cites authorities having to do with sufficiency of assignment of error under Rule 30, but these are beside the question. The burden was on the plaintiff to make out a case and it has not done so.

■ We do not overlook the argument that the findings of fact of the trial court in a law action are not to be disturbed "if there is sufficient evidence to support them." This may be admitted but we find no support in the record for the conclusions announced below. Other errors assigned and argued by appellant have been considered, but are disposed of by what has been said. Finding that the trial court was in error in finding

against the defendant, its judgment should be, and it is reversed.—Reversed.

MITCHELL, C. J., and MILLER, HAMILTON, HALE, STIGER, BLISS, and RICHARDS, JJ., concur.