JOHN S. MILLER, Appellant, v. ARTEMISIA C. WOOLSEY, Executrix of the Estate of C. L. WOOLSEY, Appellee.

No. 47342.

(Reported in 35 N. W. 2d 584)

JANUARY 11, 1949.

REHEARING DENIED MARCH 11, 1949.

Alfred Rothschild, of Waterloo, for appellant.

Mosier & Mosier and Pike, Sias, Butler & Hoxie, all of Waterloo, for appellee.

WENNERSTRUM, J.—Plaintiff brought an action for damages against defendant claiming that a wall of a building under construction by plaintiff was knocked down through the negligent operation of an earth moving machine or bulldozer operated by an employee of the defendant. It is defendant's claim that the record discloses the operator of the machine was under the control and supervision of the plaintiff and consequently a "borrowed servant", and under the rule of law heretofore announced by this and other appellate courts relative to such a situation she could not be held liable. The case was tried to the court, a jury being waived. It filed a written opinion and held the operator of the bulldozer was, under the evidence presented, a servant of the plaintiff and that the defendant could not be held liable for the damage claimed to have been done by the operator of the bulldozer in the moving of dirt on plaintiff's property. It further held that by reason of its announced conclusions it did not need to pass on the question of the operator's claimed negligence, the possible contributory negligence of the plaintiff, or the proximate cause of the accident. It dis-

missed plaintiff's petition and entered judgment against him for cost. He has appealed.

There had been erected at the time of the claimed negligence sidewalls twelve feet eight inches high on the east, north and west sides. The south wall had been constructed up to the grade level. The walls were of cement block construction, placed on concrete. In connection with the contemplated later use of the building it was necessary to do a certain amount of grading and filling in with dirt inside the walls. Appellant called the manager of the appellee by telephone and told him he wanted to hire a bulldozer for this purpose which was brought to the appellant's property and work was commenced. It is shown that during these operations a truck that had brought dirt into the inclosed area had become mired. The bulldozer which had been operating in a south-to-north direction swung around this truck and moved in a west-to-east direction toward the east wall. It was at the time of the movement of the bulldozer toward the east wall that the wall 'collapsed. It was testified to by one of the witnesses who was standing about four feet from the wall that he observed the bulldozer going east. This witness did not see whether the bulldozer itself or the dirt pushed by it hit the wall or that the blade contacted it. There is testimony that when appellant cleaned up the cement blocks of the fallen wall the following morning he found horizontal cut marks on the face of two of them.

It is the claim of the appellant that the court erred in denying recovery to him for the reasons, (a) that the record does not contain sufficient evidence to support the holding that the appellee surrendered all control and direction of his servant to the appellant so as to make him alone liable for the acts of the servant, and (b) that the record does contain sufficient evidence to charge the operator of the bulldozer with actionable negligence.

In connection with our consideration whether the record contains sufficient evidence to justify the holding of the trial court that the appellee surrendered all control and direction of his servant to the appellant we deem it advisable to set out certain of the testimony.

Ned Woolsey, manager for the defendant-appellee, was called

by the appellant as one of his witnesses and testified, in part, as follows:

"Q. And going back to June of 1947, did you rent a bulldozer to Mr. John S. Miller? A. That is correct. Q. And did he pay you for the use of this bulldozer? A. He did. Q. Showing you plaintiff's Exhibit A for identification purporting to be a statement issued by your Equipment Company, is that the statement that was sent by your office to Mr. Miller? A. That's right. * * * Q. And in this statement you included the charge for the operator of the bulldozer? A. We always furnish an operator to take care of the machine and do what the party that rents the machine—to do whatever he wants to do with it. Q. In other words, the bulldozer is in charge of your operator? A. The bulldozer is in charge of the man that rents the machine but the operations of the bulldozer are carried out by my operator; but the renter is the fellow that tells him what to do. Q. Tells him where to move the dirt? A. That's right, where to move the machine too."

John S. Miller, the appellant, testified, in part, as follows:

"Q. Did you make any contact to have somebody move dirt for you out there? * * * A. I called Woolsey's to move that dirt. * * * A. * * * After the telephone conversation they got out there with the bulldozer to do the grading. Q. And who brought the bulldozer out? A. Ned Woolsey came out with the bulldozer. Q. Did he have another man with him? A. He did. Q. Did you have a conversation with Mr. Woolsey at that time? * * * A. I told him what I wanted done. The trucks were dumping dirt in from the south end and the dirt was to be pushed back to the north to build that up for grade level. Q. And did they start to do that work as you directed them? A. They went ahead and started to work on it. Q. And who operated the bulldozer at first? A. Ned got on first and operated it there for ten or fifteen minutes. * * * Q. Then will you state whether or not he turned the bulldozer over to somebody else? A. He turned the bulldozer over to his operator. * * * That was Keith Huffman. I didn't know him at the time, I didn't know his name. Q. And did this man continue to operate the bulldozer? A. He did. * * * Q.

While this man was operating this bulldozer what, if anything, happened there? * * * A. Well, he was operating the bulldozer up to the time they pushed that over. When that truck was stuck and he went behind the truck and instead of shoving the dirt the other way which nobody told him to do— Q. Just a minute. Will you explain that entire incident to the court? A. Instead of shifting that dirt north and south he swung around behind there and was pushing east. In other words the operation was east and west. Q. Will you tell the court just how that happened? A. All I see he got right up to the wall and then he backed away and then the wall collapsed. Q. How did this wall collapse, which way did it fall? A. It fell to the east right outright, just like he pushed it right over. Q. Did you see his bulldozer run into this wall? A. I didn't actually see it hit that wall, no. * * * All I saw, I saw the wall was going down as he was backing away. * * * Q. Did you at that time examine the blocks at the point where you saw the bulldozer backing away from the wall? A. After it was cleaned off you could see where there was marks. * * * Q. Do you now recall how many marks, or rather how many blocks you saw the mark on? A. There was only two blocks I could find any mark on at all. Q. Will you describe that mark to the court that was on there? A. The mark was just like where it was hit that would show on your cement block, that's the only thing. * * * Q. Mr. Miller, going back to the time Mr. Woolsey brought the bulldozer out to your place, did you give him the directions as to what you wanted done? A. I talked with Ned and told him where I wanted that operated. Q. And what did you tell him about where you wanted the dirt moved to? A. I wanted it moved from the south end of the building towards the north. Q. To whom did you talk to about that? A. I talked to Ned Woolsey. Q. Did you at any time talk with Keith Huffman, the other operator of the bulldozer? A. I think the only time I did was once. Q. And what was the occasion for that? A. The occasion on that was at the time he was pushing that dirt there and could not drop it low enough and he came up with the bulldozer on top of the dirt pile to level it down at the top. Q. And what was your conversation with him at that time? A. I asked him why and

he said he could not drop the blade low enough to get hold of the dirt. Q. Now do you recall whether or not that was before the wall was knocked over or after? A. That was before. Q. That was before, and the only thing you did was ask him how come he was not pushing the dirt? A. That's right. I wanted to know why he was operating that bulldozer that way because it didn't look right. Q. He just said he could not drop the blade low enough? A. He could not drop the blade low enough to get all of it."

Relative to the bulldozer operator Miller testified, in part, on cross-examination as follows:

"Q. Had you at any time told the driver of the bulldozer to move the dirt behind the truck that was stuck? A. I did not definitely. Q. How far from the wall was the front of the bulldozer at the time you saw it supposedly backing away? A. I would say probably anywhere from 10 to 15 feet just roughly estimating."

The record further shows that after the wall fell the appellant told the operator that he might as well quit for the day. However, he continued working until the trucks within the building were unloaded. No new dirt was brought into the building after the accident. A review of the evidence shows that the operator had not been directed to move the dirt behind the mired truck.

I. The case of Anderson v. Abramson, 234 Iowa 792, 13 N. W. 2d 315, is the most recent pronouncement of this court on the question of the borrowed-servant doctrine. It is therein held that the burden is upon the general employer to establish not only that he loaned the servant but that he surrendered control and direction over the servant to the borrower. A further pronouncement therein made is that the one who has control over the servant must respond in damages for his act. It is also therein stated that the right of the general employer to discharge the servant or substitute another for him indicates a continuation of the general employment and such a continuation is also indicated where the general employee is using his employer's machine or appliance. Under the facts in this last-

cited case, based upon the rules of law therein announced, it was held that the question whether the control of the servant had passed to the claimed borrower was a matter for the jury.

A further holding to the effect that consideration should be given to the question of whose business the workman is furthering by the service rendered is found in Restatement of the Law, Agency, section 227, comment b, as follows:

"Inference that original service continues. In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, he has surrendered it."

II. The trial court in the instant case filed a written opinion wherein it set forth its conception of the applicable law and made an analysis of the facts. It based its decision solely on the proposition that the operator of the machine was an employee of the appellant. Consequently the only question we have to decide is whether the evidence justified the decision made by the trial court.

Where a law action is tried, as this one was, to the court, generally we would be bound by its determination of the facts. Rule 334, Rules of Civil Procedure. We take no issue with the statement made in the dissenting opinion that there should be no reversal in this case unless appellant was entitled to a directed verdict as a matter of law. We conclude that the trial court should have made such a ruling upon the one question decided by it as the evidence unquestionably, discloses that the operator of the bulldozer was an employee of the appellee. The fact that the appellant did not prove any damages was not passed on by the trial court and this question was not raised in this court. Consequently we are not in a position to submit this fact as a ground for affirmance under this state of the record, as suggested by the dissenting opinion.

In the instant case the appellant showed conclusively by his own evidence that he had no control over the operator. The record discloses that only once before the wall fell did the

appellant speak to the operator, Huffman, as shown by the following portion of the record:

"Q. Did you at any time talk with Keith Huffman, the other operator of the bulldozer? A. I think the only time I did was once. Q. * * * A. The occasion on that was at the time he was pushing that dirt there and could not drop it low enough and he came up with the bulldozer on top of the dirt pile to level it down at the top. Q. * * * A. I asked him why and he said he could not drop the blade low enough to get hold of the dirt. Q. Now do you recall whether or not that was before the wall was knocked over or after? A. That was before. Q. * * * and the only thing you did was ask him how come he was not pushing the dirt? A. That's right. I wanted to know why he was operating that bulldozer that way because it didn't look right. Q. He just said he could not drop the blade low enough? A. 'He could not drop the blade low enough to get all of it.'"

This last-quoted evidence does not show any control, supervision, or direction of the manner in which the operator was to do the work. Other portions of the record further show that Huffman came out to the appellant's building with the appellee's manager, who operated the machine for a short time and then turned it over to Huffman who continued the work.

We are unable to see how under this evidence it could be claimed that the appellant failed to prove the allegations of the petition that the machine was operated by the employee of the appellee. Under this state of the record it was incumbent on the appellee to prove not only that the operator was loaned by him but that the appellee had surrendered control and direction over him. Even considering the testimony of Woolsey, who was called by the appellant, we are unable to construe his testimony as indicating that the operator was an employee of the appellant, Miller. Ned Woolsey's statement was as follows: "The bulldozer is in charge of the man that rents the machine. The operations of the bulldozer are carried out by my operator but the renter is the fellow that tells him what to do. Q. Tells him where to move the dirt? A. That's right, where to move the machine too."

We do not feel that this general statement can be held to be contradictory to the appellant's claim that the operator was an employee of the appellee. The appellant never told Huffman where he was to move the machine. This conclusion is further borne out by the fact that the evidence shows that after the wall collapsed the operator continued the use of the bulldozer even though the appellant had told him he might as well quit for the day.

The case of Ash v. Century Lumber Co., 153 Iowa 523, 532, 133 N. W. 888, 891, 38 L. R. A., N. S., 973, passed on a somewhat similar question and under the facts therein shown a directed verdict for the defendant was affirmed. The applicable law is extensively discussed which is aptly summarized in the following quotation:

"In Wood on Master & Servant, section 287, it is said: 'In order to be held chargeable for the acts of another, the person sought to be charged must at least have the right to direct such person's conduct and to prescribe the mode and manner of doing the work, the person for whose acts he is sought to be charged must, at the time when the act complained of was done, not only have been acting for him, but also must have been authorized by him, either expressly or impliedly, to do the act.' Or, as expressed in section 317: 'The real test by which to determine whether a person is acting as the servant of another is to ascertain whether at the time when the injury was inflicted he was subject to such person's orders and control and was liable to be discharged by him for disobedience of orders or misconduct.' "

The appellee failed to present any evidence whatsoever to sustain the burden that was on him. In the light of the rules of law set forth in Anderson v. Abramson, supra, we are satisfied that the trial court should have found for the appellant on the one question here reviewed and decided by the trial court.

Where review of the evidence discloses that there is no support in the record for the conclusions announced by the trial court we may reverse. Ida Grove Independent Sch. Dist. v. Ida County, 226 Iowa 1237, 1241, 286 N. W. 407; Haldeman

v. Addison, 221 Iowa 218, 227, 265 N. W. 358, and cases cited. This is the situation in the present case. We therefore reverse.— Reversed.

MANTZ, C. J., and SMITH, MULRONEY and HAYS, JJ., concur.

GARFIELD, HALE, BLISS, and OLIVER, JJ., dissent.

GARFIELD, J. (dissenting)—I respectfully dissent.

I. The case is not reviewable de novo but only to correct errors at law. The findings of fact have the effect of a jury verdict. Rule 334, Rules of Civil Procedure. Whether such findings accord with the weight of the evidence is not here subject to review. Davis, Admx. v. Knight, 239 Iowa 1338, 35 N. W. 2d 23, and citations. The evidence must be construed in the light most favorable to the trial court's judgment. Ibid., and citations.

There should not be a reversal unless plaintiff was entitled to recover as a matter of law or, stated in another way, to a directed verdict if trial had been to a jury. Roth v. Headlee, 238 Iowa 1340, 1342, 29 N. W. 2d 923, 924. See also Kellogg v. Rhodes, 231 Iowa 1340, 1346, 4 N. W. 2d 412, 416. Plaintiff does not argue he was entitled to recover as a matter of law nor does the record show such contention was made below. Plaintiff does admit "much stronger evidence must be produced in favor of appellant than in an equity action to reach a reversal of the lower court's decision."

II. It is true, as the majority indicates, the trial court's decision states the questions of negligence, contributory negligence and proximate cause need not be passed on. However, the court found "The evidence on the question of the operator's negligence is somewhat limited" and "not very conclusive." Further, plaintiff concedes the decision below is based not only on the ground the operator of the bulldozer was under plaintiff's control at the time of the injury but also on the insufficiency of evidence of the operator's negligence. (No negligence is charged except against the operator.)

Plaintiff's argument here states:

"The lower court denied appellant's right to recovery on the

grounds: (a) That not sufficient evidence was submitted to charge the operator of the bulldozer with actionable negligence. (b) That at the time of the accident the operator was in the exclusive employment of appellant for this particular job, so his negligence could not be imputed to appellee.

"The appeal is limited to these two points, whether the record contains sufficient evidence to establish the negligence of the operator of the bulldozer and to impute such negligence to appellee."

Plaintiff's statement of errors is:

"The court erred in denying recovery to appellant for the reasons: (a) The record does not contain sufficient evidence that appellee surrendered all control and direction of his servant to appellant to make appellant alone liable for the acts of the servant. (b) The record does contain sufficient evidence to charge the operator of the bulldozer with actionable negligence."

Nearly half of plaintiff's argument is devoted to the contention there is sufficient evidence of the operator's negligence. It is apparent plaintiff misconceives the burden he assumes in asking a reversal of a decision in a law case on questions of fact. The issue here is not whether the testimony is sufficient to support recovery but whether it is so conclusive as to require recovery as a matter of law. Plaintiff is in the same position as if a jury verdict had been returned against him. In such event it would be of no avail to him to show the evidence was sufficient to have sustained a verdict in his favor. Davis, Admx. v. Knight, supra, and citations, especially Wilkins v. Howell, 194 Iowa 654, 190 N. W. 1.

Of course the burden of proof on the issue of the operator's negligence rested on plaintiff. We have recently held several times that in the absence of an admission by the adverse party it is seldom one who has the burden on an issue establishes his claim as a matter of law. Davis, Admx. v. Knight, supra, and citations; Roth v. Headlee, supra. This is especially true where the issue is one such as negligence which we have held time and again is ordinarily for the jury. Davis case, supra, and citations.

No one contends the evidence of the operator's negligence is so conclusive as to establish such claim as a matter of law.

Clearly that issue would have been for the jury, not the court, if there had been a jury. This in itself entitles defendant to an affirmance.

Further, there is no testimony of the pecuniary damage plaintiff has suffered. Any judgment for him would of necessity be based on mere guesswork. The decision below might well have been placed on this ground.

III. Even if plaintiff had conclusively proven the operator's negligence and had shown the extent of his pecuniary damage, I do not think it appears as a matter of law the operator was subject to defendant's control and direction at the time of the injury.

I disagree with the majority's holding the burden of proof rested on defendant to show he surrendered to plaintiff control and direction over the operator. A party has the burden of proof as to a particular issue or the entire case who should not prevail if no evidence were introduced on either side. That an adverse party may have the burden of going forward with proof later in the trial does not alter this rule. Cakerice v. Reiss, 230 Iowa 169, 173, 297 N. W. 305, 307, and citation; 31 C. J. S., Evidence, section 104a, pages 711, 712; 20 Am. Jur., Evidence, section 135. It is clear that if no evidence had been offered to show the operator was defendant's servant at the time of the injury plaintiff could not prevail as to such issue. Therefore plaintiff had the burden of proof as to such issue as well as the entire case.

The majority's holding the burden of proof rests on defendant as to this issue of control over the servant is based on this statement in Anderson v. Abramson, 234 Iowa 792, 794, 13 N. W. 2d 315, 316: "But the burden is upon the general employer to establish not only that he loaned the servant but that he surrendered control and direction over the servant to the borrower. See Hooper v. Brawner, 148 Md. 417, 129 A. 672, 42 A. L. R. 1437."

By the quoted statement we did not intend to hold the burden of proof, in the true sense, rests on the general employer to show surrender of control over the servant. Nor does Hooper v. Brawner, supra, so hold. What is meant is merely that the

burden of going forward with proof of surrender of control rests on the principal employer *after it is first shown the servant is in his general employ.* This is the conclusion fairly to be drawn from Hooper v. Brawner and the authorities generally.

Neither Anderson v. Abramson, supra, nor Hooper v. Brawner, cited therein, is authority for the result reached by the majority. In each case there had been a directed verdict for the general employer, thereby holding as a matter of law control over the servant had been surrendered to the borrower. Upon appeal it was held in each case such question should have been left to the jury. In the cited cases the evidence was considered in the light most favorable to the appellant. Here, as stated, it is our duty to construe the testimony in the light most favorable to the judgment below.

"A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services." Restatement of the Law, Agency, section 227, page 500. The test of liability for acts of the servant is whether in the particular service he is engaged to perform he continues liable to the direction and control of his original master or becomes subject to direction and control of the person to whom he is loaned. It is not so much the exercise of control that is decisive as the right to exercise such control. 57 C. J. S., Master and Servant, section 566a, pages 286, 287; 35 Am. Jur., Master and Servant, section 541; annotations 136 A. L. R. 525, 42 A. L. R. 1416, 1418; Ash v. Century Lumber Co., 153 Iowa 523, 531, 133 N. W. 888, 38 L. R. A., N. S., 973.

The rule to be drawn from the authorities is that in the absence of evidence to the contrary there is an inference (some authorities say a presumption) that the servant remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by his general employer. Restatement of the Law, Agency, section 227, comment b; 57 C. J. S., Master and Servant, section 615a, page 393; 1 Labatt's Master and Servant, Second Ed., section 53, page 176; id. section 57, page 192; 1 Shearman and Redfield on Negligence, Rev. Ed., section 166, pages 395, 396.

When it is shown that the person claimed to have been

negligent was the servant of the general employer he has the burden of going forward with the evidence to rebut the, inference above referred to by testimony that he surrendered to the borrower of the servant the full right to control and direct him. See authorities last above, also 35 Am. Jur., Master and Servant, section 541; Hooper v. Brawner, supra, 148 Md. 417, 129 A. 672, 42 A. L. R. 1437, 1444.

The rule applicable here on the question of burden of proof as to control of the servant is analogous to the rule recognized in Landry v. Oversen (Ladd, C. J.), 187 Iowa 284, 286, 174 N. W. 255, 256; Heavilin v. Wendell, 214 Iowa 844, 848, 241 N. W. 654, 83 A. L. R. 872; Allbaugh v. Ashby,. 226 Iowa 574, 581, 284 N. W. 816, and similar decisions.

The state of the pleadings is inconsistent with the majority's holding defendant had the burden of proof as to control of the servant at the time of the injury. Plaintiff's petition alleges "defendant * * * started to grade the dirt * * * with a bulldozer operated by Keith Huffman, a laborer in defendant's exclusive employment, acting within the scope of such employment *and subject to defendant's orders and control.*" (Italics added.) Defendant's answer is merely a denial. Generally, one who pleads the affirmative of an issue has the burden of proof on that issue. 20 Am. Jur., Evidence, section 135; 31 C. J. S., Evidence, section 104a, pages 710, 711. See also In re Estate of Ewing, 234 Iowa 950, 955, 14 N. W. 2d 633, 635.

Whether the original employer or a person to whom a servant was loaned had the right of control at the time of the injury is ordinarily a question of fact for the jury. 57 C. J. S., Master and Servant, section 617a(2), page 410; 35 Am. Jur., Master and Servant, section 541, page 971; annotation 42 A. L. R. 1416, 1418; 1 Shearman and Redfield on Negligence, Rev. Ed., section 166, page 397. Since there was no jury here I think the question was for the trial court and that there is substantial evidence to support its finding the right of control was surrendered to plaintiff.

At the time plaintiff's wall fell, dirt was being hauled by a truck from the outside and dumped near the open (south) end of a building, three sides of which had been built up with

cement blocks. Huffman with the bulldozer was then pushing this dirt to the north along the east wall. After dumping one of the loads of dirt the truck became mired in the soft ground inside the building. Huffman was attempting to move the dirt to the east away from the rear of the stalled truck when the wall fell. The east wall cornered with the north wall but was unsupported by a wall on the south, a roof or otherwise.

Plaintiff was present overseeing the work. As the trial court found, he was his own superintendent of construction and it would seem he had the right to direct Huffman in the details of what he was to do. The fair inference is plaintiff had the same right of control and direction over Huffman as over the operator of the truck, jointly engaged with Huffman in the grading work.

The truck operator, a witness for plaintiff, testified:

"Mr. Miller [plaintiff] told him [witness] where to drop the dirt * * * what section he was to fill in first * * * *and he was operating under Mr. Miller's instructions.* * * * He [witness] dumped the load, pulled out, and the bulldozer would take that load and scoop it around."

Defendant's manager said on direct examination as plaintiff's witness:

"We always furnish an operator to take care of the machine and do what the party that rents the machine * * * wants to do with it. * * * The bulldozer is in charge of the man that rents the machine but the operations of the bulldozer are carried out by my operator; but the renter is the fellow that tells him what to do * * * where to move the machine too."

Plaintiff himself testified:

"I told him [defendant's manager] what I wanted done. * * * where I wanted that operated. * * * what I wanted to use it for. * * * Q. And did they start to do that work as you directed them? A. They went ahead and started to work on it. * * * I was around there practically all the time. * * * It had been partially filled on the outside and partially * * * at the southeast and northeast corners at my instructions. I

had the boys haul dirt in and they got the bulldozer out and so it could be filled inside and outside. * * * Q. Had you at any time told the driver of the bulldozer to move the dirt behind the truck that was stuck? A. I did not definitely."

Plaintiff also said he asked Huffman once if he could not lower the blade of the bulldozer so as to get hold of more dirt. It is true, as the majority observes, plaintiff says that after the accident he told Huffman "he might as well quit for the day. The operator kept on working until the trucks were unloaded but no new dirt was brought into the building."

As might be expected, the arrangement between plaintiff and defendant for use of the bulldozer and its operator was informal. It doubtless did not occur to them to make any definite agreement as to the right of control over the operator. Whether such right was surrendered to plaintiff depends largely upon the proven facts and circumstances and the reasonable inferences therefrom.

As stated, under the authorities the decisive question is whether plaintiff had the right to control Huffman, not whether he exercised such right. I would hold there is sufficient evidence, viewed in the light most favorable to the judgment below, to warrant the conclusion plaintiff had such right of control.

Ash v. Century Lumber Co., 153 Iowa 523, 133 N. W. 888, 38 L. R. A., N. S., 973, cited by the majority is not analogous. There an injured bystander sought to hold defendant for the claimed negligence of the driver of a team owned by a third person which had been engaged to haul lumber for defendant. A directed verdict for defendant was affirmed because there was no evidence the driver was the servant of the lumber company regardless of whether he was in the general employ of the owner of the team or was merely the hirer thereof. It is apparent the burden was on plaintiff to prove the driver was the servant of defendant at the time of the injury. Certainly no burden rested on defendant. The owner of the team, who would be the general employer if there was one, was not a party to the action.

The majority cites Ida Grove Independent Sch. Dist. v. Ida County, 226 Iowa 1237, 1241, 286 N. W. 407, where a judgment

for plaintiff had been rendered in a jury-waived case. We found no support in the record for the judgment and reversed it. Obviously in the cited case defendant was entitled to prevail as a matter of law—to a directed verdict if there had been a jury. For reasons herein pointed out that is not the situation here and the cited case is not in point.

In Haldeman v. Addison, 221 Iowa 218, 265 N. W. 358, the remaining decision cited by the majority, there had been a judgment for defendant in a jury-waived case brought on a promissory note admittedly signed by defendant. We reversed the judgment because there was no evidence to support the affirmative defense interposed by defendant in an attempt to avoid liability. The opinion emphasizes the fact there was no dispute in the testimony and the case involved only the application of rules of law to undisputed facts.

I would affirm.

BLISS, OLIVER and HALE, JJ., join in this dissent.